# THE DELAWARE RAILROAD TAX.

[MINOT *v.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE
RAILROAD COMPANY AND OTHERS.]

1. Although it has been repeatedly held by this court that the legislature of a State may exempt particular parcels of property or the property of particular persons or corporations from taxation, either for a specified period or perpetually, or may limit the amount or rate of taxation to which such property shall be subjected, and that when such immunity is conferred, or such limitation is prescribed by the charter of a corporation, it becomes a part of the contract, and is equally inviolate with its other stipulations; yet before any such exemption or limitation can be admitted, the intent of the legislature to confer the immunity or prescribe the limitation must be clear beyond a reasonable doubt. All public grants are strictly construed, and nothing can be taken against the State by presumption or inference. The established rule of construction in such cases is that rights, privileges, and immunities not expressly granted are reserved.

2. Accordingly, a provision in an act of the legislature of Delaware, under which the original Wilmington and Susquehanna Railroad Company was united with the Delaware and Maryland Railroad Company, requiring the new company to pay annually into the treasury of the State a tax of one-quarter of one per cent. upon its capital stock of $400,000, did not prevent a subsequent legislature from imposing a further or different tax upon the company. The amount designated was only a declaration of the tax payable annually until a different rate should be established.

3. By an act of the legislature of Maryland, passed in 1831, and its supplement, a corporation called the Delaware and Maryland Railroad Company was created, with authority to construct and maintain a railroad from a point on the Delaware and Maryland line to some point on the Susquehanna River; and by the nineteenth section of the act it was provided that the shares of the capital stock of the company should be exempt from the imposition of any tax or burden by the State assenting to the act, except upon that portion of the permanent and fixed works of the company, which might be within the State of Maryland. By an act of the legislature of Delaware, passed in 1832, and its supplement, another corporation was created, called the Wilmington and Susquehanna Railroad Company, with authority to construct and maintain a railroad from a point on the boundary line of Pennsylvania and Delaware to the city of Wilmington, and thence towards the Susquehanna in the direction of Baltimore. In 1835 these two companies were, under acts of the legislatures of Maryland and Delaware, consolidated into one company, under the name of the latter—the Wilmington and Sus-

quehanna Railroad Company. The act of Delaware, authorizing the consolidation on her part, provided that the holders of the stocks of the two companies should, when consolidated, hold, possess, and enjoy all the property, rights, and privileges, and exercise.all the power granted to, and vested in, the companies, or either of them, by that law, or any other law or laws of that State, or of Maryland. The act of Maryland, authorizing the consolidation on her part, contained a similar provision. *Held*, that the purpose of the two provisions was to vest in the new company the rights and privileges which the original companies had previously possessed under their separate charters; the rights and privileges in Maryland which the Maryland company had there enjoyed. and the rights and privileges in Delaware which the Delaware company had there enjoyed; not to transfer to either State and enforce therein the legislation of the other. The new company, after the consolidation, stood in each State as the original company had previously stood in that State, invested with the same rights, and subject to the same liabilities. The act of consolidation, so far as Delaware was concerned, had only this effect.

4. The consolidated company abovementioned was, in 1838, united with two other railroad companies, one called the Baltimore and Port Deposit Railroad Company, chartered by the legislature of Maryland in 1831, with authority to construct and maintain a railroad from Baltimore to Port Deposit, on the Susquehanna River; and the other called the Philadelphia, Wilmington and Baltimore Railroad Company, chartered by the legislature of Pennsylvania in the same year, with authority to construct and maintain a railroad from Philadelphia to the Delaware State line. These three companies were, under acts of the legislatures of these States, Delaware, Maryland, and Pennsylvania, consolidated into one company with a common stock, retaining as its corporate name the name of the company chartered by Pennsylvania. The act of the legislature of Delaware, under which the consolidation was effected, declared that the respective companies should "constitute one company, and be entitled to all the rights, privileges, and immunities which each and all of them possess, have, and enjoy, under and by virtue of their respective charters." *Held*, that this latter provision in no respect changed the position with reference to taxation of the new company, in one of the States, from that of the old company in such State.

5. An act of the legislature of Delaware, taxing railroad and canal companies, was passed on the 8th of April, 1869. The fourth section of the act provided that every company of the class designated should, in addition to other taxes, also pay to the treasurer of the State for its use, on the first day of July then next, and on the first day of July of each year thereafter, or within thirty days from such period, a tax of *one-fourth of one per cent. upon the actual cash value of every share of its capital stock;* with a proviso that when the line of the railroad or canal belonging to a company liable to the tax lay partly in the State and partly in an adjoining State or States, the company should only be re-

quired to pay the tax on such number of the shares of its capital stock as would be in that proportion to the whole number of shares, which the length of the road or canal within the limits of the State should bear to the whole length of such road or canal. *Held*,

1st. That the tax was not imposed upon the shares of the individual stockholders, or upon the property of the corporation, but was a tax upon the corporation itself, measured by a percentage upon the cash value of a certain proportional part of the shares of its capital stock,—a rule which, though an arbitrary one, was approximately just in the case.

2d. That the tax did not conflict with the power of Congress to regulate commerce among the several States, nor interfere with the right of transit of persons and property from one State into or through another.

6. The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion.

7. A tax upon a corporation may be proportioned to the income received as well as to the value of the franchise granted or the property possessed.

8. The fact that taxation increases the expenses attendant upon the use or possession of the thing taxed, of itself constitutes no objection to its constitutionality.

9. The exercise of the authority which every State possesses to tax its corporations and all their property, real and personal, and their franchises, and to graduate the tax upon the corporations according to their business or income, or the value of their property, when this is not done by discriminating against rights held in other States, and the tax is not on imports or tonnage, or transportation to other States, cannot be regarded as conflicting with any constitutional power of Congress.

APPEAL from the Circuit Court of the United States for the District of Delaware; in which court William Minot filed a bill against the Philadelphia, Wilmington and Baltimore Railroad Company and the State Treasurer and Collector of State Taxes of Delaware, to enjoin the collection of certain taxes.

The case was thus:

On the 8th of April, 1869, the legislature of the State of Delaware passed an act taxing railroad and canal companies in the State. The first section of the act provided that all railroad and canal companies, incorporated under the laws of the State and doing business therein, should, on the first day of January then next, and on the first day of January

of each year afterwards, pay to the treasurer of the State for the use of the State, in addition to the taxes then imposed by law upon such companies, a tax of *three per cent. upon their net earnings or income received from all sources during the preceding year ;* with a proviso, that when a line of railroad or canal belonging to any company liable to the tax lay partly in the State and partly in an adjoining State or States, the part or share of such net earnings or income of the company only should be subject to the tax, as would be in that proportion to the whole net earnings or income of the company, which the length of the road or canal within the limits of the State should bear to the whole length of such road or canal.

The fourth section of the act provided that every company of the class designated should, in addition to other taxes, also pay to the treasurer of the State for its use, on the first day of July then next, and on the first day of July of each year thereafter, or within thirty days from such period, a tax of *one-fourth of one per cent. upon the actual cash value of every share of its capital stock;* with a proviso similar in its character to that of the first section, namely, that when the line of the railroad or canal belonging to a company liable to the tax lay partly in the State and partly in an adjoining State or States, the company should only be required to pay the tax on such number of the shares of its capital stock as would be in that proportion to the whole number of shares, which the length of the road or canal within the limits of the State should bear to the whole length of such road or canal.

Another section of the act further provided that every railroad company should also pay to the State treasurer on the first day of January then next, and on the first day of January of each year thereafter, or within thirty days from such period, *for the use in the State* of every locomotive belonging in whole or in part to the company, and used by it at any time during the preceding year, a tax of $100; and for the like use of each passenger car thus owned and used,

a tax of $25, and of each freight car and truck thus owned and used, a tax of $10.

The act required the president or treasurer of every company liable to these several taxes, to furnish the State treasurer with statements showing its net earnings or income from all sources during the preceding year, the number of locomotives, passenger cars, freight cars of every description; and trucks belonging to the company and used by it in the State at any time during that period, and the number of shares of the capital stock of the company, with an estimate and appraisement of the actual cash value of each share, and to pay the taxes chargeable. The act also made provision for an estimate of the earnings and an assessment of the taxes in case the statement required was not furnished, and for the collection of the taxes by sale of the property of the company, if they were not voluntarily paid.

The defendant, the Philadelphia, Wilmington and Baltimore Railroad Company, is a corporation created under the laws of Delaware, so far as it exists in that State. By connection with other companies with which under one common name it is consolidated by the legislation of Pennsylvania and Maryland, hereafter particularly mentioned, its road extends to Philadelphia in one State, and to Baltimore in the other. It is, therefore, a corporation liable to taxation by the terms of the act of April 8th, 1869, and is within the provisos of both its first and fourth sections.

The tax upon this company, imposed by the fourth section, became due for the first time in July, 1869, and in October following, in response to demands of the State treasurer, the president of the company furnished to that officer a statement showing that the capital stock of the company consisted of 186,088 shares of the value of $50 each, accompanied by a protest against the legality of the tax. Soon afterwards, Minot, the complainant, a citizen of Massachusetts, and a stockholder in the company, addressed a written communication to its president inquiring whether the company intended to protect his interests as a stockholder by resisting the collection of the tax, and stating that

as the tax was not a legal one protection against its levy should be provided. This communication was submitted to the directors, who, in answer, resolved that while they protested against the legality of the tax, they declined to take the responsibility of interfering to prevent its collection, leaving the stockholders at liberty to assert their rights in such way as they might think proper. Minot thereupon filed the present bill. Though the immediate occasion of the bill was the apprehended attempt on the part of the State of Delaware to enforce the tax imposed upon the company by the fourth section of the act of April 8th, 1869, the complainant charged that all the taxes imposed by the act in question were illegal, and sought to have the legislation imposing them, so far as it affected the Philadelphia, Wilmington, and Baltimore Railroad, the corporation defendant, declared to be unconstitutional and invalid and the collection of the taxes enjoined.

The Circuit Court adjudged the tax imposed for the use of the rolling stock to be invalid, and enjoined its enforcement, but sustained the legality of the other taxes, and a decree in conformity with this ruling was entered, from which both parties appealed to this court. On the hearing in this court the State officers of Delaware withdrew their appeal, and the inquiry of the court was thus limited to the validity of the act of April, 1869, so far as it imposed the taxes specified in its first and fourth sections.

The invalidity of that act, so far as it imposed these taxes upon the defendant corporation, was asserted upon the following grounds:

1st. That it violated the contract between the State of Delaware and the company contained in the charter of the latter.

2d. That it imposed taxes upon property beyond the jurisdiction of the State.

3d. That it conflicted with the power of Congress to regulate commerce among the several States; and,

4th. That it interfered with the right of transit for persons and property from one State into or through another.

The defendant corporation, as already mentioned, was formed by union with companies chartered by other States, and to understand fully the positions of the appellant, reference must be had to the original corporations, and the legislation by which they were created. By an act of the legislature of Maryland, passed in 1831, and its supplement, a corporation called the Delaware and Maryland Railroad Company was created, with authority to construct and maintain a railroad from a point on the Delaware and Maryland line to some point on the Susquehanna River; and by the nineteenth section of the act it was provided *that the shares of the capital stock of the company should be exempt from the imposition of any tax or burden by the State's assenting to the act, except upon that portion of the permanent and fixed works of the company, which might be within the State of Maryland.* By an act of the legislature of Delaware, passed in 1832, and its supplement, another corporation was created, called the Wilmington and Susquehanna Railroad Company, with authority to construct and maintain a railroad from a point on the boundary line of Pennsylvania and Delaware to the city of Wilmington, and thence towards the Susquehanna in the direction of Baltimore to the Delaware and Maryland line. The act provided that the company should pay annually into the treasury of the State a tax of eight per cent. on the dividends exceeding six per cent. of the capital stock actually paid in.

In 1835 these two companies were, under acts of the legislatures of Maryland and Delaware, consolidated into one company, under the name of the latter—the Wilmington and Susquehanna Railroad Company. The act of Delaware, authorizing the consolidation on her part, provided that *the holders of the stocks of the two companies should, when consolidated, hold, possess, and enjoy all the property, rights, and privileges, and exercise all the power granted to, and vested in, the companies, or either of them, by that law, or any other law or laws of that State, or of Maryland.* The act of Maryland, authorizing the consolidation on her part, contained a similar provision. The act of Delaware, at the same time, repealed the pro-

Diagram of the railroads.

vision in the charter of the original Wilmington and Sus-
quehanna Railroad Company, requiring the payment of the
tax of eight per cent. on the dividends exceeding six per
cent. of the capital stock actually paid in, and provided that
*the consolidated company should pay annually into the treasury
of the State, a tax of one-quarter of one per cent. on its capital
stock of four hundred thousand dollars, the tax to be paid in semi-
annual instalments, on the first of January and July of each
year.*

This consolidated company was, in 1838, united with two
other railroad companies, one called the Baltimore and Port
Deposit Railroad Company, chartered by the legislature of
Maryland in 1831, with authority to construct and maintain
a railroad from Baltimore to Port Deposit, on the Susque-
hanna River; and the other called the Philadelphia, Wil-
mington, and Baltimore Railroad Company, chartered by
the legislature of Pennsylvania in the same year, with au-
thority to construct and maintain a railroad from Philadel-
phia to the Delaware State line. These three companies
were, under acts of the legislatures of these States, Dela-
ware, Maryland, and Pennsylvania, consolidated into one
company with a common stock, retaining as its corporate
name the name of the company chartered by Pennsylvania.
The act of the legislature of Delaware, under which the con-
solidation was effected, declared that the respective com-
panies should "constitute one company, and be entitled to
*all the rights, privileges, and immunities which each and all of
them possess, have, and enjoy, under and by virtue of their respec-
tive charters.*"

Previous to the consolidation, the three companies had
constructed and were operating their respective railroads,
which, together, formed a connected line of railroad from
Philadelphia to Baltimore, *via* Wilmington, excepting the
interval between the eastern terminus of the Baltimore and
Port Deposit railroad, on the western bank of the Susque-
hanna, and the western terminus of the Wilmington and
Susquehanna railroad, on the eastern bank of the same
river, which interval was supplied by a ferry; but the line

was inferior in structure and equipment to that since maintained by the consolidated company.

Since the consolidation, the Philadelphia, Wilmington, and Baltimore Railroad Company had built a bridge across the Susquehanna, in the State of Maryland, at a great expense, and had thus established and now maintains a continuous railroad route between Philadelphia and Baltimore, and had expended large sums in laying an additional main track, sidings and turnouts, and in building depots and stations, and in furnishing an adequate equipment of rolling-stock. The capital stock of the company when the bill was filed was represented by 186,088 fully paid shares of the par value of $50 each, of which 184,524 shares were held by persons who were neither citizens nor residents of Delaware.

The capital stock of the Maryland and Pennsylvania companies, previous to and at the time of the consolidation of these companies with the Delaware company, represented real and personal estate of great value (locally situated in these States) belonging to stockholders not domiciled in Delaware.

The entire length of the railroad of the consolidated Philadelphia, Wilmington, and Baltimore Railroad Company, including a branch in the State of Maryland, known as the Port Deposit Branch, is $97\frac{74}{100}$ miles, of which $23\frac{8}{10}$ miles are in the State of Delaware; but the value of the property of the company locally situated in the State of Delaware is much less than $\frac{2308}{9974}$ of its entire property; the bridge across the Susquehanna, in the State of Maryland, representing alone an expenditure exceeding $1,500,000, and the value of the depot and station grounds, in the States of Pennsylvania and Maryland, with the buildings and structures thereon, exceeding $\frac{3666}{9974}$ of the value of the entire depot and station property of the company.

*Messrs. J. E. Gowen, G. C. Gordon, and J. P. Comegys, for the appellant:*

1st. *The tax imposed upon the shares of the capital stock of the Philadelphia, Wilmington and Baltimore Railroad Company*

*by the act of April 8th, 1869, was a violation of the contract be-*
*tween the State of Delaware and the company contained in the*
*charter of the latter.*

There is no doubt that a State may by contract exempt
particular property from taxation. All that is necessary is
that the language of the contract be plain, and the purpose
to relinquish unquestionable. The exemption relied on in
the present case is not founded on an ordinary charter. In
assenting to the creation and organization of the present
Philadelphia, Wilmington and Baltimore Railroad Com-
pany, the State of Delaware contracted with corporations
and citizens of other States whose property was not in any
way subject to her power of taxation. The question to be
determined was not so much as to what right of taxation
should be relinquished by the State, as to what right of taxa-
tion should be assumed by it. It can scarcely be thought
that the negotiation between the State of Delaware and the
foreign corporations, proceeded on the basis that the State
of Delaware would, in the absence of any provision on the
subject, acquire an unlimited right to tax the franchises of
these corporations. If such a theory had been entertained,
it would necessarily have occurred to the parties interested
that the States of Maryland and Pennsylvania could exer-
cise the same prerogative, and that the proposed corporation
would be subjected to the taxation of three distinct sover-
eignties in none of which would the corporators be ade-
quately represented.

When, then, the State of Delaware prescribed the terms
of taxation on which she would consent to the proposed
consolidation, these terms may fairly be considered, not in
the light of the release, but in that of the acquisition of a
privilege; so far, indeed, as the foreign companies were
concerned.

What now are the provisions of the charter on the subject
of taxation?

By the original act of incorporation of the Wilmington
and Susquehanna Railroad Company (act of January 18th,
1832), the company was required to pay an annual tax of

eight per cent. on all dividends which may exceed six per centum on the capital stock actually paid in, and this was the only measure of taxation specifically prescribed in the act.

Such being the status of the company, the act of July 24th, 1835, providing for its consolidation with the Delaware and Maryland Railroad Company of Maryland, repealed this provision of the original act, and then enacted that the consolidated company " shall pay annually into the treasury of the State a tax of one-quarter of one per cent. on the capital stock thereof of $400,000; the said tax to be paid semi-annually, &c., *in each and every year hereafter*. This provision, we contend, meant that the tax on capital stock, for which the consolidated company was to be liable, should be that specified, viz., a quarter of one per cent. on the sum of $400,000, and that no greater or other tax should thereafter be imposed on its capital. This tax was to be imposed annually *thereafter;* that is, annually during the existence of the consolidated corporation. A suggestion that the State of Delaware might, immediately after the Maryland company had accepted the terms on which it was authorized to unite with the Delaware company, impose a more onerous rate of taxation on the capital stock of the united companies than that specified, would undoubtedly have been treated as an injurious imputation on the good faith of the legislature of Delaware.

Doubtless it may be said that notwithstanding that the act specified the tax which it would lay, it did so without saying that no further or different tax should ever be laid, and that, therefore, a further and different one may be laid. Such seems to have been the doctrine held by the Supreme Court of Pennsylvania in *The Easton Bank* v. *The Commonwealth of Pennsylvania*,* where it was said that a bank rechartered under a law relating to it and a number of other banks, which provided that dividends should be taxed at a certain rate, was not exempt from the operation of a subsequent general law which increased the tax on dividends.

---

* 10 Pennsylvania State, 442.

But the doctrine is met and denied by this court in a case decided since the case in Pennsylvania; the case of *Raleigh and Gaston Railroad Company* v. *Reid.** There the charter contained an exemption from taxation for a term of fifteen years; but, after the expiration of this limitation, the legislature was to be at liberty to tax the individual shares of the stockholders whenever their annual profits exceeded eight per cent., provided that the tax did not exceed twenty-five cents a share per annum; and it was held that a tax levied on the company after the expiration of the fifteen years, but before the annual profits had reached eight per cent., was a violation of the contract. " When a statute," said Davis, J., in delivering the opinion of this court, "limits a thing to be done in a particular mode, it includes a negative of any other mode." Is not this case in point? The legislature had asserted its right to tax the stock in a particular way after the expiration of a certain period, but it had not expressly said that it would not tax the stock in some other way, or that it would not tax the lands or personal property of the company; but the court held that the mode of taxation specified in the charter excluded any other mode. In the present case the legislature agreed that the tax on the capital stock of the consolidated company should be one thousand dollars a year, and by so doing did they not agree that it should not be ten thousand dollars, or twenty thousand dollars, or anything else than one thousand dollars?

Indeed in Pennsylvania in a case much later than that of the Easton Bank,† the same court that made the decision there, declared the following to be one of the conclusions derivable from a review of the decisions of this court on the subject of charter contracts between the State and corporations:

" If the legislature, in creating a corporation, prescribe a rate of taxation, and expressly release the power to impose further taxes, *or do not expressly reserve the power to themselves*, a subse-

---

* 13 Wallace, 269; and see Home of the Friendless v. Rouse, 8 Id. 431, and the Binghamton Bridge Case, 3 Id. 51.

† Iron City Bank v. The City of Pittsburgh, 37 Pennsylvania State, 340.

quent tax law does impair the obligation of the contract, and is void."

A conclusion which is plainly inconsistent with the decision in the Easton Bank case.

But the contract immunity from taxation claimed for the capital stock of the present consolidated Philadelphia, Wilmington and Baltimore Railroad Company rests on other grounds.

The Maryland act by which the "Delaware and Maryland Railroad Company" was incorporated contained the following provision:

"And the shares of the capital stock of said company shall be deemed and considered personal estate, *and shall be exempt from the imposition of any tax or burden by the State's assenting to this law, except upon that portion of the permanent and fixed works of said company which may lie within the State of Maryland.*"

The Delaware act of July 24th, 1835, providing for consolidation of the Wilmington and Susquehanna Railroad Company of Delaware with the Delaware and Maryland Railroad Company of Delaware, declared that the two companies, when consolidated, should be styled "The Wilmington and Susquehanna Railroad Company," and that by and under that corporate name the holders of the stock of the said railroad companies should

"*Hold, possess, and enjoy all the property, rights, and privileges, and exercise all the powers granted to and vested in the said railroad companies, or either of them, by this or any other law or laws of this State or of the State of Maryland.*"

These terms are as broad and general as they could be made. The consolidated company was to possess every *right and privilege* which *either* of the original companies possessed or enjoyed under any law of Maryland or Delaware. It was not said that the consolidated company should possess and enjoy every right, privilege, &c., which the laws of Delaware conferred on the Delaware company. The *purport and effect* of the act is, "that they shall, when united,

have all the rights and immunities in this State (Delaware) which each of them had in the State by which it was chartered." It is true that the phrase, "in this State," is not actually used; but the legislature which passed the act was the legislature of Delaware, and they were confirming rights and privileges to be exercised and enjoyed in Delaware, and not elsewhere. We, therefore, contend that, as immunity from taxation of its capital stock was a privilege which the Maryland company enjoyed, the consolidated company succeeded to the same immunity. The stock of the Delaware and Maryland Railroad Company is now represented by and forms an integral part of the stock of the consolidated company, and when the stock of the latter company is taxed that of the former is taxed also. The theory that the Delaware act of consolidation was merely intended to secure to the consolidated company all the privileges in Maryland which the Maryland company possessed, and in Delaware all the privileges which the Delaware company formerly possessed, disregards the terms of the Delaware act, and imputes to the Delaware legislature the assumption of legislative power in the State of Maryland.

It is true that the exemption from taxation contained in the original charter of the Delaware and Maryland Railroad Company referred to Maryland taxation only; but still it was an exemption from State taxation, and as such a *privilege* of the company; and when this, with all other privileges of the Maryland company, was conferred upon the consolidated company in Delaware, the latter company thereby acquired the privilege of exemption of its capital stock from State taxation, and that in Delaware meant Delaware State taxation.

2d. *The tax on capital stock imposed by the fourth section of the act of April 8th, 1869, was an unlawful usurpation by the State of Delaware of the right to tax property beyond its jurisdiction.*

The tax is imposed, in the first instance, upon the actual cash value of every share of the capital stock of every railroad and every canal company in Delaware; but with a proviso that where the line of railroad or canal belonging to

any company liable to the tax lies partly in Delaware and partly in an adjoining State or States, "such company shall only be required to pay the tax·aforesaid on such number of the shares of its capital stock as will be in that proportion to the whole number of shares of such capital stock which the length of said railroad or canal within the limits of this State bears to the whole length of such railroad or canal."

The tax, therefore, whether considered as a tax upon shares of stock as representing the property of the corporation, or as representing the property of the individual stockholders, was not imposed upon the Delaware property of the corporation or upon property of the Delaware stockholders only; and if it can be sustained at all, must be sustained on a theory which would sustain the taxation of the entire capital stock of the company by each of the three States of Delaware, Maryland, and Pennsylvania, irrespective of the amount invested in each State, or of the residence of the stockholders. For it is obvious that any apportionment of taxation according to the mileage of the road in each State must be purely arbitrary. No one would expect to find that the ratio of mileage of the road in Delaware, to its entire length, was the same as that of the capital invested in Delaware to the entire capital of the company, or that the proportion of Delaware stockholders could be ascertained in the same way. In fact, it is admitted in this case, that while the entire length of the railroad is $99\frac{74}{100}$ miles, of which $23\frac{8}{10}$ are in Delaware, the value of the property of the company locally situated in the State of Delaware is much less than that which would be indicated by the ratio of these figures; and that of the 186,088 shares of the capital stock of the present company, 184,524 are held by persons who are neither citizens nor residents of Delaware.

Treating the question then as practically and substantially whether the State of Delaware can lawfully tax the entire capital stock of the Philadelphia, Wilmington and Baltimore Railroad Company, we have a question which is decisively answered in the negative by the judgment of this court in

the case of *Railroad Company* v. *Jackson.** It was there held that "a State has no power to tax the interest on bonds secured in this case by mortgage given by a railroad corporation, and binding every part of the road, when the road is partially in another State; one road incorporated in two States." The decision was placed on the ground that to permit such taxation would be giving effect to State legislation upon property and interests lying beyond the State jurisdiction.

3d. *The tax on capital stock imposed by the fourth section of the act of April 8th, 1869, was a violation of the clause of the Constitution of the United States which confers upon Congress the power " to regulate commerce with foreign nations and among the several States."*

4th. *It was an unlawful interference with the constitutional right of transit for persons and property from one State into or through another.*

These two points may be considered together.

That the imposition of a tax upon the capital invested in the railroad between Philadelphia and Baltimore does really regulate the interstate commerce upon the railroad, seems evident; and that such a tax does interfere with and burden the right of passage for persons or property from one State to another may be said to be equally evident.

It is true that the same objections could be made to a State tax upon the railroad or the capital stock or the earnings of a railroad company where operations were confined to the territory of the State which levied the tax; and it is equally true that a tax upon horses and wagons in one State would to some extent affect commerce between the States. But the answer to the argument implied by this suggestion is, that the agencies and instruments of commerce must be subject to the taxation of the States within whose jurisdiction they exist, and the power of Congress to regulate commerce between the States must *ex necessitate*, be qualified by the indirect operation of the exercise of this power as well

---

* 7 Wallace, 262.

as of the State power to regulate its own domestic com-
merce.   Where, however, a State undertakes to tax, even
within its own jurisdiction, interstate commerce, much more
when it undertakes to tax interstate commerce, or the agen-
cies or instrumentalities of interstate commerce, beyond its
jurisdiction, it usurps the prerogative of the Congress of
the United States, and infringes the constitutional rights of
citizens of the United States, since its taxing power does
not extend to such subjects.

If the State of Delaware had, in plain terms, imposed a
tax upon the capital invested in the Pennsylvania and Mary-
land sections of the Philadelphia, Wilmington and Balti-
more Railroad, or the earnings derived from the use of
these sections, the tax would probably be admitted by all to
be a burden laid upon interstate commerce or intercourse.
Those who denied it to be such would have to establish that
a tax upon a railroad used almost entirely for commerce and
intercourse between the States was not a tax upon such com-
merce or intercourse.

The tax actually imposed by the State of Delaware is a
tax upon the railroad in Maryland and Pennsylvania.   A
certain portion of the entire capital of the company is taxed,
and that portion represents the railroad in the three States.
It is an admitted fact in this case that the capital thus se-
lected greatly over-represents, the property of the company
locally situated in Delaware.   The excess taxed is invested
in Maryland and Pennsylvania.   It has already been at-
tempted to be shown that the taxing power of Delaware
cannot be exercised over property beyond its jurisdiction;
and as the property here sought to be taxed is a railroad ex-
tending through three States and used almost entirely for
interstate intercourse and the earnings of that railroad, we
submit that this tax is an unconstitutional interference with,
and taxation of, interstate commerce and intercourse.

If this tax can be sustained then it would seem to follow
that Pennsylvania, Maryland, and Delaware can each and all
tax the entire capital and the entire earnings of this one
railroad; and that the same rule would hold good in the

case of a railroad chartered by a much greater number of States. The effect of such a system of taxation upon the commerce and intercourse between the States is too obvious to be stated.*

*Messrs. T. F. Bayard and E. Saulsbury, for the State officers of Delaware, contra.*

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court, as follows:

It is contended by the appellant that the act of Delaware of April 8th, 1869, so far as it imposes taxes upon the corporation defendant, violates the contract between the State and the corporation contained in the charter of the latter. His position is that the provision, in the act of Delaware of 1835, by which the Wilmington and Susquehanna Railroad Company was united with the Delaware and Maryland Railroad Company, that the new company should pay annually into the treasury of the State a tax of one-quarter of one per cent. upon its capital stock of four hundred thousand dollars, being accepted by the stockholders of the two companies by their union into one company, constituted a contract between the new company and the State of Delaware, which precluded that State from imposing any greater or different tax upon the capital stock of the new company; and that the provision in the same act of Delaware, that the new company should possess all the rights and privileges vested in the original companies, or either of them, by that law, or any other law of that State or of Maryland, extended to the new company the same exemption from taxation on its shares of capital stock, which was possessed by the Maryland corporation under its charter; and that the same limitation upon the taxation of the capital stock, and the same immunity of the shares from any taxation, were extended to the corporation defendant by the provisions of the act of Delaware under which this latter company was formed.

---

* See Crandall *v.* Nevada, 6 Wallace, 35; Case of the State Freight Tax, 15 Id. 232.

That the charter of a private corporation is a contract be-
tween the State and the corporators, and within the provision
of the Constitution prohibiting legislation impairing the
obligation of contracts, has been the settled law of this
court since the decision in the Dartmouth College case.*
Nor does it make any difference that the uses of the corpo-
ration are public, if the corporation itself be private. The
contract is equally protected from legislative interference,
whether the public be interested in the exercise of its fran-
chise or the charter be granted for the sole benefit of its
corporators. This doctrine is not controverted by any one;
it is the established law; and the question in all cases, when
it becomes necessary to apply it, is whether the particular
legislative interference alleged does in fact impair the obli-
gation of the contract; for it is not every kind of legislative
interference with the powers, action, and property of the
corporation which will have that result.

It has also been repeatedly held by this court that the
legislature of a State may exempt particular parcels of prop-
erty or the property of particular persons or corporations
from taxation, either for a specified period or perpetually,
or may limit the amount or rate of taxation, to which such
property shall be subjected. And when such immunity is
conferred, or such limitation is prescribed by the charter of
a corporation, it becomes a part of the contract, and is
equally inviolate with its other stipulations. But before
any such exemption or limitation can be admitted, the in-
tent of the legislature to confer the immunity or prescribe
the limitation must be clear beyond a reasonable doubt.
All public grants are strictly construed. Nothing can be
taken against the State by presumption or inference. The
established rule of construction in such cases is that rights,
privileges, and immunities not expressly granted are re-
served. There is no safety to the public interests in any
other rule. And with special force does the principle, upon
which the rule rests, apply when the right, privilege, or im-

---

* 4 Wheaton, 518

munity claimed calls for any abridgment of the powers of the government, or any restraint upon their exercise. The power of taxation is an attribute of sovereignty, and is essential to every independent government. As this court has said, the whole community is interested in retaining it undiminished, and has " a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear."* If the point were not already adjudged it would admit of grave consideration, whether the legislature of a State can surrender this power, and make its action in this respect binding, upon its successors any more than it can surrender its police power or its right of eminent domain. But the point being adjudged, the surrender when claimed must be shown by clear, unambiguous language, which will admit of no reasonable construction consistent with the reservation of the power. If a doubt arise as to the intent of the legislature, that doubt must be solved in favor of the State.

If, now, we apply this rule of construction to the provision of the act of Delaware, under which the original Wilmington and Susquehanna Railroad Company was united with the Delaware and Maryland Railroad Company, requiring the new company to pay annually into the treasury of the State a tax of one-quarter of one per cent. upon its capital stock of four hundred thousand dollars, the position of the appellant falls to the ground. That provision is not accompanied with any words indicating the intent of the legislature that no further or different tax should not be subsequently levied. Had the provision in question been embodied in an independent act, no one would pretend that the designation of the amount and character of the tax carried with it any implication, that the tax should remain unchanged in these particulars for all future time during the existence of the corporation. And it is not perceived how a different conclusion is warranted because the tax is designated in an independent section of the act, under which the

---

* Providence Bank v. Billings, 4 Peters, 561.

new company was formed, instead of being designated in an independent act.   As already observed, nothing can be taken from the power of the State in this respect by presumption or inference.

In the case of *The Commonwealth* v. *The Easton Bank*,* we have an adjudication of the Supreme Court of Pennsylvania upon the precise question here presented.   The Easton Bank had been chartered under a general law which prescribed the payment of taxes on its dividends at a fixed rate.   A subsequent statute increased that rate, and it was argued, as here, that the designation in the original act created a contract on the part of the State that no additional tax should be laid, and that the latter act, therefore, impaired the obligation of the contract.   But the court held that the designation in the original act was nothing more than a simple declaration of the tax *then* to be paid by the bank, and did not give the slightest intimation of an agreement or understanding, that the tax should not be increased during the existence of the charter.   "To deduce," said the court, "from premises so insufficient, a consequence of such magnitude, would, indeed, be a gross violation of the wholesome principle that an abandonment of the power of taxation is only to be established by clearly showing this to have been the deliberate purpose of the State."

The position of the appellant, as to the effect of the provision in the same act of Delaware, that the new company should possess all the rights and privileges vested in the original companies, or either of them, by that act, or any other law of that State or the State of Maryland, is more plausible, but equally unfounded.   It proceeds, we think, as stated by the Circuit Court, upon a misapprehension of the purpose of the provision.   A similar provision, as already stated, is contained in the Maryland act authorizing, on her part, the consolidation of the companies.   The purpose of the two provisions was to vest in the new company the rights and privileges which the original companies had previously

---

* 10 Pennsylvania State, 451.

possesed under their separate charters; the rights and privileges in Maryland which the Maryland company had there enjoyed, and the rights and privileges in Delaware which the Delaware company had there enjoyed; not to transfer to either State and enforce therein the legislation of the other.   The new company was clothed by the legislature of Delaware, so far as that legislature could clothe it, with all the rights and privileges of both the original companies; but as the Maryland company took under the legislation of Maryland only exemption from taxation of its shares in Maryand, the privilege of the new company in this matter could only be a similar exemption in that State, not a similar exemption of the shares of its capital stock from taxation in Delaware.   The new company stood in each State as the original company had previously stood in that State, invested with the same rights, and subject to the same liabilities. And the act of consolidation, so far as Delaware was concerned, had only this effect.

The act of that State under which the three companies were consolidated into one, and the present defendant corporation was formed, contained a similar provision to the one we have been considering, that the new consolidated company should be entitled to all the rights, privileges, and immunities which each and all of them possessed and enjoyed under their respective charters, a provision which, in no respect, changed the position with reference to taxation of the new company in one of the States from that of the old company in such State.   Such is substantially the construction given by this court in the case of the Philadelphia, Wilmington, and Baltimore Railroad Company against Maryland, reported in the 10th of Howard.*   In that case the question arose whether the qualified exemption of the line of road which belonged to one of the companies was extended to the consolidated company under the provision in question; and the court said that, " as these companies held their corperate privileges under different charters, the evi-

---

* 10 Howard, 377.   In the title given in 10th Howard the word " Baltimore " is omitted by mistake.

dent meaning of this provision is, that whatever privileges and advantages either of them possessed should in like manner be held and possessed by the new company, to the extent of the road they had respectively occupied before the union; that it should stand in their place, and possess the power, rights, and privileges they had severally enjoyed in the portions of the road which had previously belonged to them."

We are, therefore, of opinion that the act of April 8th, 1869, is not obnoxious to the objection that it violates any contract between the State of Delaware and the company contained in the charter of the latter.

We proceed, therefore, to the second objection to the act, that it imposes taxes upon property beyond the jurisdiction of the State. If such be the fact the tax to that extent is invalid, for the power of taxation of every State is necessarily confined to subjects within its jurisdiction. The objection of the appellant is directed principally to the tax imposed by the fourth section of the act, and assumes that the tax must be considered as laid upon the shares as representing the separate property of the individual stockholders, or as representing the property of the corporation. And the argument is that if the tax be laid upon the shares of the stockholders it falls upon property out of the State, because nearly all the stockholders, at least a much greater number than the ratio of the mileage of the road in Delaware to its entire length, are citizens and residents of other States; and if the tax be laid upon the shares as representing the property of the corporation, it falls upon property out of the State, because the ratio of the mileage of the road in Delaware to its entire length is not that which the capital invested by the company in that State bears to the entire capital of the company, or that which the value of the property of the company there situated bears to the value of its entire property.

If the assumption of the appellant were correct, there would be difficulty in sustaining the validity of the tax.

In the first place, the share of a stockholder is, in one aspect, something different from the capital stock of the com-

pany; the latter only is the property of the corporation; the former is the individual interest of the stockholder, constituting his right to a proportional part of the dividends when declared, and to a proportional part of the effects of the corporation when dissolved, after payment of its debts. Regarded in that aspect it is an interest or right which accompanies the person of the owner, having no locality independent of his domicile.* But whether, when thus regarded, it can be treated as so far severable from the property to which it relates as to be taxable independent of the locality of the latter is a question not necessary now to decide. The argument of the appellant assumes that it is thus severable.

In any aspect, if provision for the taxation of the shares at the locality of the company be made in its charter, their taxability at such locality is annexed as an incident to the shares, and it does not matter where the domicile of the owner may be. The tax may then be enforced through the corporation by requiring it to withhold the amount from the dividends payable thereon. The shares in the national banks created under the act of Congress of June 3d, 1864, are made taxable at the place where the bank is located, and not elsewhere; and in the case of *The National Bank* v. *Commonwealth*, reported in the 9th of Wallace, a law of Kentucky requiring the banks in that State to pay the tax laid on their shares was sustained by this court.† But in the act of Delaware under which the corporation defendant was formed, there is no such provision for the taxation of the shares of the individual stockholders.

In the second place, assuming that the tax is upon the property of the corporation, if the ratio of the value of the property in Delaware to the value of the whole property of the company be less than that which the length of the road in Delaware bears to its entire length, and such is admitted

---

* Van Allen *v.* Assessors, 3 Wallace, 583; Union Bank *v.* State, 9 Yerger, 501; Richmond *v.* Daniel, 14 Grattan, 385; Savings Bank *v.* Nashua, 46 New Hampshire, 398; Dwight *v.* Mayor, 12 Allen, 322; Redfield's Supplement to Law of Railways, 507–510.

† 9 Wallace, 353.

to be the fact, a tax imposed upon the property in Delaware according to the ratio of the length of its road to the length of the whole road must necessarily fall upon property out of the State. The length of the whole road is in round numbers one hundred miles; the length in Delaware is twenty-four miles. The tax upon the property estimated according to this ratio would be in Delaware $\frac{24}{100}$ or $\frac{6}{25}$ of the amount of the tax upon the whole property. But the value of the property in Delaware is not $\frac{6}{25}$ of the value of the whole property, but much less than this proportion would require.

We repeat, therefore, that upon the assumption made by the appellant there would be difficulty in sustaining the tax.

We do not think, however, the assumption is correct. As we construe the language of the fourth section, the tax is neither imposed upon the shares of the individual stockholders nor upon the property of the corporation, but is a tax upon the corporation itself, measured by a percentage upon the cash value of a certain proportional part of the shares of its capital stock; a rule which, though an arbitrary one, is approximately just, at any rate is one which the legislature of Delaware was at liberty to adopt.

The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the State; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction.

Nothing was urged in the argument specially against the tax upon the corporation under the first section of the act, which is determined by the net earnings or income of the company. Whatever objections could be presented are answered by the observations already made upon the tax under the other section. A tax upon a corporation may be pro-

portioned to the income received as well as to the value of the franchise granted or the property possessed.

It remains to notice the objections that the act of 1869 conflicts with the power of Congress to regulate commerce among the several States, and interferes with the right of transit of persons and property from one State into or through another.

The tax imposed by the act in question affects commerce among the States and impedes the transit of persons and property from one State to another just in the same way, and in no other, that taxation of any kind necessarily increases the expenses attendant upon the use or possession of the thing taxed. That taxation produces this result of itself constitutes no objection to its constitutionality. As was very justly observed by this court in a recent case, "Every tax upon personal property, or upon occupations, business, or franchises, affects more or less the subjects, and the operations of commerce. Yet it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution."*

The exercise of the authority which every State possesses to tax its corporations and all their property, real and personal, and their franchises, and to graduate the tax upon the corporations according to their business or income, or the value of their property, when this is not done by discriminating against rights held in other States, and the tax is not on imports, exports, or tonnage, or transportation to other States, cannot be regarded as conflicting with any constitutional power of Congress.

From the views expressed, it follows that the judgment of the Circuit Court must be

AFFIRMED, AND IT IS SO ORDERED.

---

* State Tax on Railway Gross Receipts, 15 Wallace, 293.