In the Matter of the Petition of MARTIN J. McMAHON, as Receiver of Taxes, to enforce the Payment of the Tax for Personal Property imposed upon FRANCIS A. PALMER.

[SPECIAL TERM.]

(Decided November, 1882.)

Congress has power to authorize the taxation, under the laws of a state, of shares in a national banking association located within such state, as provided by section 5219 of the Revised Statutes of the United States.

The restriction contained in that section, and also embodied in chapter 596 of Laws of New York of 1880, that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," is not to be construed as detracting from the authority of the act of 1880 on the ground that, since there is no law in this state for the taxation of moneyed capital in the hands of individual citizens when invested in the shares of other corporations than banks, any tax upon bank shares must necessarily be at a greater

McMahon v. Palmer.

rate than taxes on shares in other corporations. The property of stockholders in their shares is entirely distinct from the corporate property and the capital stock.

The fact that in making the assessment under the act of 1880 the amount of United States bonds exempt from taxation held by the bank is not deducted from the assessed value of the bank stock, does not invalidate the statute, as no limitations are imposed by the act upon the power of the assessors to make such deductions as the law requires. Neither is the act unconstitutional, as depriving a person of liberty and property without due process of law, or without a trial by jury.

The assessment under the act of 1880 is properly made, in the City of New York, in separate books by wards; as the statute requires the taxation to be made in the ward where the bank is located, and personal property in New York City is not assessed by wards. And in that city confirmation of the assessment by the Board of Aldermen is sufficient.

The act in relation to the collection of arrears of personal taxes in the City of New York (L. 1867, c. 334), which authorized the Counsel for the Corporation "to assume, conduct or control any suit or proceeding contemplated under the provisions" of the act, empowered him to institute such proceedings, and did not restrict his authority to proceedings already instituted by the Attorney for the Collection of the Arrears of Personal Taxes.

· APPLICATION to enforce payment of tax for personal property.

*William C. Whitney*, for the Receiver of Taxes.

*William Hildreth Field*, for Francis A. Palmer.

VAN BRUNT, J.—This is an application under the act of 1843 to punish the said F. A. Palmer for his misconduct in neglecting and refusing to pay a tax imposed upon his personal property, consisting of shares of stock in the National Broadway Bank, situated in the Third Ward of the City of New York.

In opposition to the proceeding it is urged,

1st. That this proceeding is the first opportunity that Mr. Palmer as an individual has had to correct the assessment and taxation of his bank stock, for that all former proceedings have been directed against the National Broadway Bank as a corporation.

2d. That there being no difference between the capital

stock and personal property of a corporation and the shares held by all stockholders, such shares are not the subject of taxation, because section 5219 of the Revised Statutes of the United States authorizing such taxation is beyond the power of Congress; and chapter 596 of the Laws of 1880, providing for such taxation, is unconstitutional and void for impairing the obligations of contracts.

3d. That other corporations than banks and individual citizens having government bonds are allowed to deduct government bonds in assessing value of capital stock or personal property, but in banks they are not allowed.

4th. There is no law for the taxation of moneyed capital in the hands of individual citizens in this state when invested in the shares of other corporations than banks, and the authority to tax moneyed capital in the shares of banks as other moneyed capital in the hands of individual citizens, when invested in other corporations than banks, is taxed, confers no authority, since any tax upon bank shares must necessarily be at a greater rate than taxes on shares in other corporations than banks not taxed.

5th. That the assessment in question is void because the assessors and others have failed to comply with the requirements of the local statutes regulating their proceedings:

(*a*). The assessment of shareholders by a separate list does not comply with the statute;

(*b*). There has been no confirmation by the Board of Supervisors, and the Board of Aldermen have no power.

6th. That there is no pretense of misconduct in this matter unless the desire to have one's rights determined by the court is misconduct, and the receiver should be forced under all the circumstances of the case to bring an action under the Laws of 1867, chapter 334, to have all the issues tried by an action and not upon affidavits.

7th. That the Laws of 1867, chapter 334, under which the Counsel to the Corporation presumes to act in this matter, does not authorize him to institute any suit or proceeding, but only to assume, conduct or control any suit or proceed-

ing already instituted by the Attorney for the Collection of Arrears of Personal Taxes.

8th. That chapter 230 of the Laws of 1843 is unconstitutional and void, for that it would deprive a person of liberty and property without due process of law, and without a trial by jury.

9th. If the assessment is treated as a judicial judgment, then Mr. Palmer has had no opportunity to be heard, to produce witnesses, and to cross-examine the witnesses of the assessors, and to appeal therefrom for error; and if this proceeding under the act of 1843 is maintainable and the receiver not remitted to an action, then he has been deprived of a trial by jury.

In respect to the first proposition stated by the counsel for Mr. Palmer—namely, that this proceeding is the first opportunity that Mr. Palmer, as an individual, has had to correct the assessment and taxation of his bank stock—it is sufficient to say that the papers in this case show that on the 12th day of April, 1881, Mr. Palmer did appear before the Commissioners of Taxes, and made application to have the assessment upon his bank stock corrected by deducting the sum of $57,000, the amount of debts due by him, exclusive of the portion of such debts which had been taken into account in the adjustment of another assessment for personal property before the Commissioners of Taxes and Assessments for this year, and that such deduction was thereupon made from the assessed value of his bank stock. It is apparent, therefore, from this significant fact, that Mr. Palmer knew that his bank stock had been assessed. He made an application for a reduction of the same, as appears by the affidavit filed with the Commissioners of Taxes and Assessments, and if he felt aggrieved in the valuation which was put upon his bank stock his remedy was to have the action of the Board of Assessors reviewed by *certiorari*.

I fail to see any principle which limits the power of Congress to impose obligations upon corporations of its creation. If, in the creation of a national bank, Congress provides that the shares of the stock issued by such bank may be

the subject of taxation under the laws of this state, where such bank is created, I have been unable to see, and my attention has not been called to any principle which would restrict Congress from making such condition precedent to the acceptance of a charter by a national bank from its hands. If national banks do not desire to accept a charter under the provisions of the National Bank act, they are under no obligations so to do, and if persons do not desire to be taxed upon their bank shares where the bank is located, there is no obligation upon such persons to become the owners of such undesirable property.

As to the unconstitutionality of chapter 596 of the Laws of 1880 in that it impairs the obligation of contracts because the amount of government bonds held by the bank is not permitted to be deducted from the assessed value of the bank stock, the point does not seem to be well taken. The law is not unconstitutional because it has been improperly applied. In the act of 1880 no limitations are made upon the power of the assessors to make such deductions as the law requires. They are directed to deduct the value of the real estate belonging to the bank. If other deductions should have been made, and they have not been made, the remedy of the party aggrieved is, as has already been suggested, to review the action of the assessors by *certiorari;* but such action cannot affect the validity and constitutionality of the act of the legislature from which they claim their power.

The third objection is answered by what has been already stated.

As to the fourth proposition, the reasoning in the decision of Mr. Justice WALLACE in the case of the *Albany City National Bank* v. *William J. Maher*, Receiver of Taxes of the City of Albany, seems to be conclusive. He says:

"But I am of opinion that the complainant cannot prevail upon this theory, and that shareholders to national banks are not subjected to a discrimination or rule of assessment which does not obtain as to stockholders in other corporations, because the act for the taxation of corporations generally does not exempt individuals from assess-

ment or taxation upon their personal property or moneyed capital invested in the shares of such corporations. This act exempts only the capital stock and personal property of such corporations and joint stock companies from assessment or taxation. There is a wide difference, for the purposes of taxation, between the capital stock and personal property of a corporation and the shares held by the several stockholders. Capital stock and shares therein are distinct species of property—as distinct as real estate and the mortgage by which it may· be encumbered. The corporation and its capital and property is one thing ; the stockholders and their property in its shares quite another.

" The corporation has the legal title and right of disposition of all the corporate property, subject to the conditions of its charter. The stockholder's right is to enjoy a proportionate part of the profits, or upon dissolution of the corporation a proportionate part of the assets after payment of debts. This is a distinct, independent interest or property, held by the stockholder, like any other property that may belong to him. It is this interest which the National Banking act has left subject to taxation by the states, while the states are denied the power to tax the capital stock of the banking association. It probably would not have been within the constitutional power of Congress to permit the states to tax the capital stock of the banks. But no one doubts the authority of Congress to permit the states to tax the shares of the stockholders, and because property of shareholders in shares, and the property of the corporation in its capital, are distinct property interests, both may be taxed (*Van Allen* v. *The Assessors*, 3 Wall. 573; *The Delaware R. R. Tax*, 18 Wall. 206 ; *Farrington* v. *Tennessee*, 95 U. S. 679). As both may be taxed, both may be exempted from taxation by legislative authority, but one is not exempted by the exemption of the other.

" This construction of the exemption clause is consistent not only with the language used, but is consonant with the general scheme of the act, as evinced by its several provisions. The first section, which prescribes the method by

which the basis of the assessment shall be furnished by officers of corporations, enjoins the duty upon the officers of corporations liable to be taxed upon their capital stock. In the third section of the act prescribing the rate of the tax, the tax is assessed upon the capital stock of the corporation. There is nothing in the act to indicate that any other subject of taxation than capital stock of corporations was within the contemplation of the legislature. The exemption must not be construed to extend to a different subject, and to a distinct species of property."

The distinction which Mr. Justice WALLACE points out between the property of the corporation and the property of the individual seems to have been recognized by the courts, and that such distinction exists in fact is apparent when the different rights and obligations of the corporation and the shareholders are considered as stated by Mr. Justice WALLACE.

The corporations own certain property. The corporation, as such, has the disposition and management of such property. The stockholder, as such, has no control of such disposition or management, except such as he may incidentally have by reason of his power to vote at an election for the directors or trustees of such corporations. The stockholder's interest is to enjoy a proportionate share of the profits of the business of the corporation. Over his shares the stockholder has absolute control. He may sell, mortgage, give away, or dispose of in any manner all his right, title and interest to those shares, and his right to share in the profits of the business of the corporation, provided it is done in the manner prescribed by the charter and by-laws of the corporation. These shares, therefore, seem to be distinct and independent properties held by the shareholder, like any other property, such as bonds and mortgages, or promissory notes, and are therefore as distinct from the property of the corporation as a bond and mortgage is from the real estate by which it may be encumbered.

As to the fifth objection, an examination of the laws relating to taxes and assessments in the City of New York.

McMahon v. Palmer.

will, it seems to me, show that there has been a substantial compliance with the requirements of such laws. The Revised Statutes provide that the Board of Assessors shall prepare an assessment roll, in which they shall set down in four columns, and according to the best information in their power:

1. In the first column the names of all the taxable inhabitants in the town or ward, as the case may be.

2. In the second column the quantity of land to be taxed to each person.

3. In the third column the full value of such land according to the definition of the term "land" as given in the first title of this chapter.

4. In the fourth column the full value of all the taxable personal property owned by such person, after deducting the just debts owing by him.

These provisions contemplated the taxation of the property of the inhabitants of cities by wards, and that a separate list or roll of such taxable property may be made for each ward. Of course a citizen or inhabitant of a city may own property in several wards, but can reside in but one. His personal property would be taxed in the ward in which he resided, in connection with the real estate which such inhabitant owned in said ward. The real estate of the inhabitant situated in a ward different from that in which he resided would be taxed in such ward, but the roll for such ward could contain no assessment for personal taxes, as such inhabitant would be assessed upon his personal property in the ward in which he resided. That such was the interpretation put upon the Revised Statutes by the legislature is evidenced by the language used in section 1 of article 2 of chapter 230 of the Laws of 1843, which provides that the Board of Supervisors of the City and County of New York shall cause the corrected assessment roll of each ward of the said city, or a fair copy thereof, to be delivered to the Receiver of Taxes in said city. A separate assessment roll for each ward is evidently contemplated in the language of this section.

The provisions of the Revised Statutes in regard to the assessment of personal property of inhabitants of the City of New York, directing that personal property should be assessed in connection with the real property situated in the ward where such inhabitant resided, have been changed by section 5 of chapter 410 of the Laws of 1867, which provides that the assessed valuation of all personal property (referring to the personal property taxable in the City and County of New York) shall be entered by such commissioners in books or rolls in alphabetical order with the names of the persons and corporations subject to taxation. This provision contemplates, in respect to the lists of taxes upon personal property in said city, the using of several books or rolls, and provides that the assessed valuations of such personal property shall be kept in books or rolls distinct from that relating to real estate; and that the names of the persons and corporations who are taxed or assessed upon personal property shall be entered in said books in alphabetical order.   Section 3 of chapter 596 of the Laws of 1880 provides that the stockholders in every bank, banking association or trust company organized under the authority of this state or of the United States shall be taxed on the value of their shares of stock therein, and said shares shall be included in the valuation of the personal property of such stockholders in the assessment of taxes at the place, city, town or ward where such bank, banking association or trust company is located, and not elsewhere, and whether the stockholder reside in said place, city, town or ward or not; but in the assessment of said shares each stockholder shall be allowed all the deductions and exemptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this state, and the assessment or taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state.   This provision requires that the shares of stockholders in a bank must be assessed in the ward in which the bank is situated, and not elsewhere, and clearly contemplates that assess-

ments of bank stocks shall be by wards, and that such assessments can be included in the valuation of the personal property of such stockholders only in the cases of residence of the shareholder where the system of taxing personal as well as real is by wards, and not, as in the City of New York, where the requirements of the statute are that personal property shall be assessed separately from real estate. It is this requirement of this statute, as has already been said, which Mr. Justice WALLACE, in the case above mentioned, held not to have been complied with. The provision in regard to taxation of personal property by wards not applying to the City of New York, the decision of Mr. Justice WALLACE has no application to the case under consideration.

The statute of 1880 requires that the taxation of bank shares shall be made in the ward where such bank is located; and as, in the City of New York, personal property is not assessed by wards, but the personal property of the inhabitants of such city is assessed in books of personal estate containing the names alphabetically arranged, it is therefore necessary that separate books by wards should be kept relating to the taxation of the shares of stockholders in banks, as in no other way could the provision of the statute of 1880 be complied with.

The papers in this case seem to show that such has been substantially the practice of the Board of Assessors in reference to bank stocks in the City of New York. In these books are entered the names of banks, the wards in which they were situated, the names of the stockholders, their residence, their number of shares, the assessed value and corrected value. These books, therefore, contain a complete record by wards of the assessed valuation put upon the shares of each individual stockholder in each of the banks situated within the ward, and constitute a complete assessment roll within the requirements of the statute relating to the assessment of personal property in the City of New York. It would appear, therefore, that the entry of the assessed valuation of the shares of bank stock owned by Mr. Palmer

was made in a manner which substantially complied with the provisions of the statute. The papers disclose that he certainly was not misled by the manner in which the same was entered, because he applied and had deducted his personal indebtedness from the amount of the assessed value of bank stock.

The objection that there had been no confirmation by the Board of Supervisors, and that the Board of Aldermen have no power, does not appear to be supported by any provision of the Constitution. The Legislature have the power to say by whom and how the assessment lists in the City and County of New York shall be confirmed, and when they provide, as they do, by section 3 of chapter 304 of the Laws of 1874, that the Board of Aldermen of the City of New York shall exercise and perform those duties which have heretofore been conferred upon the Board of Supervisors of the said city and county, all the powers exercised and possessed by the Board of Supervisors of the said city and county which are not expressly provided in the Constitution to be exercised by a Board of Supervisors, become vested in the Board of Aldermen as such; and this provision of the statute had precisely the same effect as though the Legislature had enacted that thereafter the tax lists in the City and County of New York should be confirmed by the Board of Aldermen of said city and county instead of as heretofore by the Board of Supervisors of said city and county.

As to the sixth objection, it is sufficient to say that the act of 1843, chapter 230, contemplates that the refusal and neglect of a party upon whom a tax has been imposed makes him guilty of a misconduct in refusing to pay such tax when he has the property wherewith to make such payment.

As to the seventh objection, it would appear that the counsel for the respondent misapprehends the language of section 12 of chapter 334 of the Laws of 1867. He assumes that the power of the Corporation Counsel to intervene in proceedings for the collection of personal taxes relates only

to proceedings already instituted, and does not give him the right to act as counsel for the Receiver of Taxes in the institution and conduct of such proceedings.

Prior to the provisions appointing the Attorney for the Collection of Arrears of Personal Taxes, the Receiver of Taxes does not seem to have been restricted in the employment of counsel for the carrying on of the proceedings to collect personal taxes which it was his duty to institute. By chapter 334 of the Laws of 1867 the appointment of an Attorney for the Collection of Arrears of Personal Taxes was provided for, and it was also provided that the Receiver of Taxes should send to such attorney monthly the cases of personal taxes embraced in the assessment rolls in the City of New York, where the assessment is $1,000 or more, &c. and that said attorney should be charged with the prosecution of all suits and proceedings in any court of jurisdiction for the collection of all cases of personal tax in said city sent to him by such Receiver of Taxes under the provisions of that act. The act then provides that the Counsel for the Corporation of the City of New York, whenever he may deem it essential to the public interest, shall assume, conduct and control any suit or proceeding contemplated under the provisions of this act, and employ counsel in cases connected with the assessment and collection of taxes. It seems to me evident that the language of this section authorizes the Counsel to the Corporation to intervene at any time and under any circumstances where he deems it essential, and control and conduct all proceedings. If he shall control, conduct and assume all proceedings, it certainly means that he shall have the power to institute such proceedings upon behalf of the Receiver of Taxes. He having determined that it was proper that any proceeding should be instituted, the Corporation Counsel has the power to conduct it and control it, and the initiation of the proceedings seems to form a very important part of such conduct and control.

The objection that chapter 230 of the Laws of 1843 is unconstitutional, because it deprives a person of his liberty

without a trial by jury, is clearly not well taken.  It is not within the provision of any article of the Constitution of the United States or of the State of New York.  The pro-. vision of the Constitution of the United States is, that no person shall be deprived of life, liberty or property without due process of law.  As to whether a part of such due process of law consists of trial by jury or not is a question which is not legislated upon in the Constitution.  It is entirely silent upon that point.  The provisions of the Constitution of the State of New York in reference to this subject are precisely the same—no mention of trial by jury is made in that connection.  A previous section provides that a trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; but no suggestion is made that at the time of the adoption of that Constitution the trial by jury of the rights of a party who has failed to pay his taxes then existed by any statute, law or Constitution.

As to the ninth objection, it seems to be sufficient to say that Mr. Palmer has had his opportunity to be heard, and he presented such evidence and such claim as he thought proper; and there is no pretense that he made any attempt to cross-examine any witnesses or to produce any witnesses upon his own behalf; and he is not deprived of any right of appeal, because he had the right to review the proceedings of the assessors by *certiorari*.

I am of the opinion, therefore, that the tax upon the bank shares of Mr. Palmer was levied according to law, and that he should be punished by a fine for his misconduct in not paying said tax, in an amount sufficient for the payment of the tax assessed and of the costs and expenses of these proceedings.

Order accordingly.