Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 It has been so often decided by this court that a charter of incorporation granted by a State creates a contract between'the State and the corporators, which the State cannot violate, that it would be a work of supererogation to repeat the reasons on which the argument is founded. It is true that when a corporation claims an exemption from taxation, it must show that the power to tax has been clearly relinquished by the State, and if there be a reasonable doubt about this having been done, that doubt must be solved in
 
 *267
 
 favor of the State. If, however, the contract is plain and unambiguous, and the meaning of the parties to it can be clearly ascertained, it is the duty of the court to give effect to it, the same as if it were a contract between private persons, without regard to its supposed injurious effects upon the public interests.
 

 It may be conceded that it were better for the interest of the State, that the taxing power, which is one of the highest and most important attributes of sovereignty, should on no occasion be surrendered. In the nature of things the necessities of the government cannot always be foreseen, and in the changes of time, the ability to raise revenue from every species of property may be of vital importance to the State, but the courts of the country are not the proper tribunals to apply the corrective to improvident legislation of this character. If there be no constitutional restraint on the action of the legislature on this subject, there is no remedy, except through the influence of a wise public sentiment, reaching and controlling the conduct of the law-making power.
 

 There is no difficulty whatever in this case. The General Assembly of North Carolina told the Wilmington and Weldon Railroad Company, in language which no one can misunderstand, that if they would complete the work of internal improvement for which they were incorporated, their property and the shares of their stockholders should be forever exempt from taxation. This is not denied, but it is contended that the subsequent legislation does not impair the obligation of the contract, and this presents the only question in the case. The taxes imposed are upon the franchise and rolling stock of the company, and upon lots of land appurtenant to and forming part of the property of the company, and necessary to be used in the successful operation of its business. It certainly requires no argument to show that a railroad corporation cannot perform the functions for which it was created without owuing rolling stock, and a limited quantity of real estate, and that these are embraced it the general term property Property is a word of large
 
 *268
 
 import, and in its application to this companj" included all the real and personal estate required by it for the successful prosecution of its business. If it had appeared that the company had acquired either real or persona! estate beyond its legitimate wauts, it is very clear that such acquisitions would not be within the protection of the contract. But no such ease has arisen, and we are only called upon to decide upon the case made by the record, which shows plainly enough that the company has not undertaken to abuse the favor of the legislature.
 

 It is insisted, however, that the tax on the franchise is something entirely distinct from the property of the corporation, and that the legislature, therefore, was not inhibited from taxing it. This position is equally unsound with the others taken in this case. Nothing is better settled than that the franchise of a private corporation—which in its application to a railroad is the privilege of running it and taking fare and freight—is property, and of the most valuable kind, as it cannot be taken for public use even without compensation.
 
 *
 
 It is true it is not the same sort of property as the rolling stock, road-bed, and depot grounds, but it is equally with them covered by the general term “the property of the company,” and, therefore, equally within the protection of the charter.
 

 It is needless to argue the point further. It is clear that the legislation in controversy did impair the obligation of the contract, which the General Assembly of North Carolina made with the plaintiff in error, and it follows that the judgment of the Supreme Court must be reversed, and the cause remanded for further proceedings
 

 In conformity with this opinion.
 

 *
 

 Redfield on Railways, 129, $ 70.