## MORGAN *v.* LOUISIANA.

1. Upon a sale of the property and franchises of a railroad corporation under a decree founded upon a mortgage which in terms covers the franchises, or under a process upon a money judgment against the company, immunity from ·taxation upon the property of the company provided in the act of incorporation does not accompany the property in its transfer to the purchaser. The immunity from taxation in such cases is a personal privilege of the company, and not transferable.

2. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its roads and works would be of little value ; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. Immunity from taxation is not itself a franchise of a railroad corporation which passes as such without other description to a purchaser of its property.

ERROR to the Supreme Court of the State of Louisiana.

This was an action by the State of Louisiana against Morgan, to recover certain taxes.

The facts are stated in the opinion of the court.

The judgment below was in favor of the plaintiff. The defendant thereupon sued out this writ of error.

Submitted on printed arguments by *Mr. Henry J. Leovy* for the plaintiff in error.

1. The legislature of Louisiana had power to exempt the property from taxation ; and the grant made in this case was a contract which was inviolable. *New Jersey* v. *Wilson,* 7 Cranch, 164 ; *Jefferson Bank* v. *Shelly,* 1 Black, 536 ; *Home of the Friendless* v. *Rouse,* 8 Wall. 430.; *Wilmington Railroad* v. *Reid,* 13 id. 264, 269 ; *Humphrey* v. *Pegues,* 16 id. 244 ; 18 id. 392 ; 20 id. 36 ; 21 id. 492 ; Lacey's Dig. Railway Decisions, p. 853 ; 31 Ill. 484 ; 17 id. 291.

2. Exemption from taxation is a franchise that may be mortgaged and sold, especially in Louisiana. La. Stat. 1853, 1854, 1856 ; Civil Code, arts. 2449, 3183 ; *New Jersey* v. *Wilson,* 7 Cranch, 165 ; *Jefferson Bank* v. *Shelly,* 1 Black, 536 ; *Home of the Friendless* v. *Rouse,* 8 Wall. 430 ; *Trask* v. *Maguire,* 18 id. 392 ; *Pacific Railroad* v. *Maguire,* 20 id. 36 ; *Humphrey* v. *Pegues,* 16 id. 244 ; 13 id. 269 ; *Wilmington Railroad* v. *Reid,* 13 id. 264 ; *Bardstown & Louisville R. R. Co.* v. *Metcalfe,* 4 Ky. (Met.) 199 ; *Allen* v. *Mont. R. R. Co.,* 11 Ala. 437 ;

*Pollard* v. *Maddox*, 28 id. 321; 30 Vt. 182; 70 Penn. 355; *St. Paul Co.* v. *Parker*, 14 Minn. 297; Lacey's Dig. Railway Decisions, 753; *Union Bank Case*, 6 Humph. 515; *Enfield* v. *Hart*, 17 Conn. 40.

Plaintiff in error is the owner by purchase at public sale of all the property formerly owned by the railroad company, including all its franchises; and his title to the same has in no manner been forfeited.

3. The exemption from taxation of the capital stock of the company is without limitation; but that part invested in works, fixtures, workshops, &c., is exempt till ten years after completion of the road, &c. Sect. 2, Act 1853. It is admitted that the capital stock is exempt for ever. The "capital stock" is the capital of the company, whether remaining in money or invested in the necessary real estate, rails, and track, in grading, and in laying rails. *Trask* v. *Maguire*, 18 Wall. 391; *Wilmington Railroad* v. *Reid*, 13 id. 264; *Pacific Railroad* v. *Maguire*, 20 id. 42.

The tax claimed in this case is for $400,000, real estate (part of the road), $300,000, capital, and $19,000, ferry-boats; in all, $719,000. All this is clearly part of the capital stock exempted from taxation.

*Mr. J. Q. A. Fellows* for the defendant in error.

As the first grand division of eighty miles of road, purchased by the plaintiff in error at the marshal's sale in May, 1869, had been completed for more than ten years prior to that time, it was not exempt from taxation, and his purchase of the remaining property of the railroad company at the sheriff's sale in March, 1870, did not, and could not, include the franchises of the company.

Only by virtue of an express authorization of the legislature can the franchises of a corporation be divested. This was not the case at the sheriff's sale, made in the execution of an ordinary judgment on an ordinary debt against the railroad company. 1 Redf. Railw. c. 7, p. 117 (ed. 1873); 2 id. c. 7, pp. 484, 501 (ed. 1873); Lacey's Dig. Railway Decisions, p. 292, Nos. 4, 7, 21, 25; *Plymouth Railroad* v. *Colwell*, 39 Penn. St. 337; *State* v. *Rives*, 5 Ired. 297; *Benedict* v. *Heineberg*, 43 Vt. 231; *State* v. *Mexican Gulf Railroad Co.*, 3 Rob. (La.) 513.

The plaintiff in error could buy at the sheriff's sale only the tangible property of the railroad company, and not any of its franchises.. He therefore did not acquire the right of exemption from taxation of the property purchased previously at the marshal's sale; even if such exemption be a franchise, and not a strictly personal right or immunity, which is neither transferable by the railroad company, nor subject to seizure and sale under execution.

The plaintiff in error can therefore claim only by virtue of his purchase at the marshal's sale, under the laws as they existed at the time of his purchase.

MR. JUSTICE FIELD delivered the opinion of the court.

This is an action by the State of Louisiana to recover of the defendant taxes levied upon his property for the years 1870 and 1871.. The defendant contends that the property was exempt from taxation in his hands, because it was thus exempt whilst held by the New Orleans, Opelousas, and Great Western Railroad Company, from whom it was acquired in part by purchase at a mortgage sale, and in part by purchase at a sheriff's sale upon a money judgment. The facts upon which the defendant relies are substantially these: By an act passed in April, 1853, the legislature of Louisiana incorporated the New Orleans, Opelousas, and Great Western Railroad Company, for the purpose of constructing, working, and maintaining a railroad from Algiers, opposite New Orleans, westward to Berwick's Bay, and thence to Washington, in the parish of St. Landry, to be afterwards extended to a point on the Sabine River most favorable for the purpose of continuing the road through the State of Texas to El Paso on the Rio Grande.

The act provided that the capital stock of the company should be exempt from taxation, and that the works, fixtures, workshops, warehouses, vehicles of transportation, and other appurtenances of the company, should be exempt from taxation for ten years after the completion of the road within the limits of the State; and that the president, engineers, clerks, agents, and servants of the company, should be exempt from jury duty, and from military duty, except in case of invasion or insurrection.

The company was authorized to borrow, from time to time, such sums as might be required for the construction of the road above the amount received from subscriptions to its capital stock, not exceeding $6,000,000, and to secure the loans by mortgaging its property in whole or in part, as might be deemed expedient.  Subsequently, in 1856, the legislature passed a general law extending the powers of railroad companies, and providing that, in addition to those already conferred, any railroad company established under the laws of the State might borrow, from time to time, such sums of money as might be required for the construction or repairs of any railroad, and for that purpose might issue bonds or obligations secured by mortgage on the property and franchises of the company, and payable at such times and places as its president and directors might designate.

. In 1857 the road of the company was completed as far as Berwick's Bay, a distance of eighty miles from New Orleans; and, to obtain funds to continue its construction beyond that point, the directors, in March, 1859, authorized the president to issue two thousand bonds of the company, in sums of $1000 each, and to secure their payment and interest by a first mortgage on the portion of the road completed, together with the land over which the road was constructed, the equipments, appurtenances, rights, and franchises of the company applicable to that portion.  Under this authority the bonds were issued and the mortgage executed in April, 1859.  With the funds raised by this means work on the road was resumed, and its grading was nearly completed to Opelousas, a distance of eighty miles beyond Berwick's Bay, when, in 1862, the work was discontinued, the road having been seized by the military forces of the United States, by whom it was held until February, 1866, when it was restored to the company.  Since its restoration no further work has been done, and the construction of the portion of the road beyond Opelousas to the Sabine River has never been commenced.

The defendant was the owner of several hundred of the mortgage bonds issued; and their coupons not being paid, proceedings were, in 1869, instituted by him in the Circuit Court of the United States for the sale of the mortgaged property, which

resulted in the issue of executory process to the marshal of the district.    At the sale made by that officer, the defendant became the purchaser of the completed division of the road, and the equipments and franchises appertaining to that division, with its cars, locomotives, machinery, utensils, and effects generally.    The proceeds received not covering the entire indebtedness of the company, suits were instituted by several bondholders in the State courts for the amount due them, and judgments were recovered, under which the balance of the property of the company, including the franchises appertaining thereto, were sold by the sheriff of New Orleans, and were purchased by the defendant.

The mortgage of the company in terms covered its franchises, so far as they appertained to the completed portion or division of the road, from Algiers to Berwick's Bay; the sale of the marshal upon the executory process followed the terms of the mortgage in the description of the property sold; and the sheriff, upon the judgments of the State court, undertook to sell and convey with other property the franchises of the company appertaining to the road beyond Berwick's Bay to the Sabine River.    The question presented is, whether, under the designation of franchises, the immunity from taxation upon its property possessed by the railroad company accompanied the property in its transfer to the defendant, or whether that immunity was a mere personal privilege of the company, and, therefore, not transferable to others.    The Supreme Court of the State took the latter view, and held that the exemption did not attach to the property of the corporation so as to follow it into the hands of third parties.    In this view we agree with the State court.    The greater part of the property outside of the capital stock was liable to constant waste, deterioration, and destruction, and, according to the ordinary course of business, would be disposed of by the company as new works were required.    It can hardly be supposed that the legislature intended that the exemption should follow the fixtures and vehicles of the company after they had passed out of its control, so that, wherever found, the power of taxation could not touch them; or, that workshops and warehouses ceasing to be the property of the company should carry to its subsequent posses-

sors a privilege intended only for the benefit of the corporation. The language of the statute requires no such construction, and intendments will not be indulged to enlarge the operation of a clause restraining the exercise of a sovereign attribute of a State. As has been often said by this court, the whole community is interested in retaining the power of taxation undiminished, and has a right to insist that its abandonment shall not be presumed in any case where the deliberate purpose of the State to abandon it does not appear. *Providence Bank* v. *Billings*, 4 Pet. 561; *The Delaware Railroad Tax*, 18 Wall. 206. Here no such purpose appears. Here it is the capital stock of the company, and its works, fixtures, workshops, warehouses, vehicles of transportation and appurtenances, which the statute declares shall be exempt; evidently meaning that it is to the property of the company, so long as it remains such, that the exemption shall apply. This view is strengthened by the provision exempting the president, engineers, clerks, agents, and servants of the company from jury and military duty. No one would pretend that such exemption attended the individuals after they had ceased to be officers and servants of the company. The exemption of the property of the company from taxation, and the exemption of its officers and servants from jury and military duty, were both intended for the benefit of the company, and its benefit alone. In their personal character they are analogous to the exemptions from execution of certain property of debtors, made by laws of several of the States. Thus, in some States, a limited quantity of household and kitchen furniture, the tools of a mechanic, the tent and pick of a miner, the farming utensils of a husbandman, the instruments of a surgeon and dentist, and the law library of an attorney and counsellor, — are exempt from execution. In these and similar cases it has never been pretended that the exemption attached to the property continued when the ownership of the debtor ceased. The condition of the exemption in terms makes the exemption applicable to the property only so long as that belongs to the debtor. A similar condition attached by its terms to the exemption from taxation of the property of the railroad company here, and a like result must be deemed to have followed its change of ownership. In our judgment, the

exemption ceased when the property of the company passed to the defendant.

Much confusion of thought has arisen in this case and in similar cases from attaching a vague and undefined meaning to the term " franchises." It is often used as synonymous with rights, privileges, and immunities, though of a personal and temporary character; so that, if any one of these exists, it is loosely termed a " franchise," and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company; the latter is personal, and incapable of transfer without express statutory direction.

The cases cited by counsel are not in conflict with this view. In *New Jersey* v. *Wilson*, 7 Cranch, 164, the land purchased by the State from the Indians was by the statute exempted from subsequent taxation without reference to its ownership. The privilege, said the court, though for the benefit of the Indians, was annexed by the terms which created it to the land itself, and not to the persons. In the case of *Home of the Friendless* v. *Rouse*, 8 Wall. 430, a statute of Missouri incorporating a charitable institution exempted its property from taxation; and the court held that the charter was a contract between the State and the corporators, that the property given for charitable uses specified in it should, so long as it was applied to those uses, be exempted from taxation. This decision accords with the view we have taken in this case of the operation of the exemption clause. The case of *Wilmington Railroad* v. *Reid*, 13 Wall. 264, only asserts the doctrine that it is competent for the legislature to exempt property from taxation,

and that the exemption, when made in a charter of a corporation, constitutes a contract, the question there being whether subsequent legislation impaired the obligation of such contract.

In *Trask* v. *Maguire*, 18 Wall. 391, the act of Missouri, under which a sale of the St. Louis and Iron Mountain Railroad was made by commissioners of the State, provided that the purchasers should have all the rights, franchises, privileges, and *immunities* enjoyed by the defaulting company. The new company was, therefore, necessarily held to have acquired the immunity from taxation which the original company had possessed, if it were competent for the legislature at the time under the new constitution, to confer this privilege. It was decided, however, that the legislature was prohibited by the constitution from conferring the privilege, and that the law, passed under the ordinance adopted with the new constitution, providing for a sale of the franchises of a defaulting railroad company with its road, did not require immunity from taxation to be embraced within them; the language being construed to refer to such franchises as were essential to the operation of the road sold, and without which the ownership of the road would be comparatively valueless, — a view which accords with what we have said in this case.

Immunity of particular property from taxation is a privilege which may sometimes be transferred under that designation, as held in *Humphrey* v. *Pegues*, 16 Wall. 244. All that we now decide is, that such immunity is not itself a franchise of a railroad corporation which passes as such without other description to a purchaser of its property.

The views we have expressed render it unnecessary to consider whether the neglect for years of the company to prosecute its work, accompanied by the fact that it has become insolvent, and all its property has been disposed of at forced sales, does not warrant the conclusion that any further attempt to complete the road to the Sabine River has been abandoned.

*Judgment affirmed.*