WILMINGTON AND WELDON RAILROAD COMPANY v.
B. I. ALSBROOK.

*Taxation, Exemption from — Contract — Privilege—Corporation—Construction of Charter—Railroads, Consolidation of.*

1. The power of taxation being essential to the life of government, exemptions therefrom are regarded as in derogation of sovereign authority and common right, and will never be presumed.

2. The grant of an exemption from taxation must be expressed by words too plain to be mistaken; if a doubt arise as to the intent of the Legislature, that doubt must be resolved in favor of the State.

3. The grant of an exemption from taxation without some consideration or equivalent therefor received by the State does not constitute a contract, but a privilege merely, which may be recalled at the pleasure of the Legislature.

4. The consolidation of a railroad not exempt from taxation with one which is exempt, does not extend the exemption to the property of the former, in the absence of clear, unmistakable provisions to that effect in the law authorizing the consolidation.

5. The exemption from taxation claimed to have been granted in ch. 78, Laws 1833–'4, incorporating the Wilmington and Raleigh Railroad Company (now the Wilmington and Weldon Railroad Company), if valid at all, is confined to the "main line,"—from Wilmington to Halifax—and does not extend to or embrace any "branch roads" which that company was authorized by its charter to construct or acquire.

6. The acquisition of the Halifax and Weldon Railroad by the Wilmington and Raleigh Railroad Company (now the Wilmington and Weldon Railroad Company) under the act of 1835–'6, did not merge the first-named road in the main line of the latter, and hence, the property thereby acquired is not entitled to claim the exemption from taxation alleged to have been granted in the charter of the Wilmington and Weldon Railroad Company.

7. The rolling stock of the Wilmington and Weldon Railroad Company used upon the branch roads, or roads otherwise acquired, ascertained by a *pro rata* standard based on the relative lengths thereof to the whole line, is liable to taxation.

MERRIMON, C. J., disssenting.

This was a MOTION made by the plaintiff for an injunction in an action in HALIFAX Superior Court, until final hearing, restraining the defendant from proceeding to enforce the collection of certain taxes assessed against its property, heard by *Connor, J.*, at Chambers in Wilson, N. C., on the 30th day of December, A. D. 1891.

The temporary restraining order, with the order to show cause, was made by Brown, J., at Weldon, N. C., and was returnable before Bryan, J., of the Second Judicial District, on the 29th day of December, A. D. 1891, at Newbern, N. C. By consent of the parties the motion was heard by Connor, J., of Third Judicial District, as above set forth.

From the complaint, answer, reply, affidavits and exhibits, the Judge found the following facts:

By an act of the General Assembly of North Carolina ratified the 3d day of January, 1834, entitled "An act to Incorporate the Wilmington and Raleigh Railroad Company," the plaintiff was incorporated and duly organized by complying with the provisions of the said act. Revised Statute, Vol. II, pp. 335–347.

That the said corporation, by virtue of said act and amendments made thereto, to-wit, an act ratified the 15th day of December, A. D. 1835, entitled "An act to amend an act passed in the year one thousand eight hundred and thirty-three, entitled 'An act to incorporate the Wilmington and Raleigh Railroad Company,'" Rev. Stat., Vol. II, p. 348, duly began, and during the year 1840, completed a railroad from the town of Wilmington to the town of Weldon on the Roanoke river, connecting with the Petersburg and Norfolk Railroad.

That at the session of 1833 of the General Assembly of North Carolina an act was passed and duly ratified, entitled "An act to incorporate the Halifax and Weldon Railroad Company." Rev. Stat., Vol. II, pp. 325–334.

That pursuant to the provisions of said charter, the said Halifax and Weldon Railroad Company procured its right-of-way, laid out and constructed the road-bed and road from the town of Weldon to the town of Halifax, a distance of about ten miles and entirely in the county of Halifax. That the said corporation had no rolling stock, but permitted the Portsmouth Railroad Company during the year 1836 to run its cars over the road-bed and track.

That at the session of 1836 of the General Assembly of said State an act was passed and duly ratified, entitled "An act empowering the Halifax and Weldon Railroad Company to subscribe their stock to the Wilmington and Raleigh Railroad Company." Rev. Stat., Vol. II, pp. 334–335.

That pursuant to the provisions of the said act, the said Halifax and Weldon Railroad Company and the said Wil-

mington and Raleigh Railroad Company, on the 14th day of February, 1837, entered into an agreement, a copy of which is hereunto attached and marked Exhibit "E."

That the provisions of said agreement were in all respects executed and carried into effect by the said corporations.

That by an oversight, the said agreement was not registered as by the provisions of the fourth section of said act was required. That at the session of 1874 and 1875 of the General Assembly of said State an act was passed and duly ratified, entitled, "An act to allow the Wilmington and Weldon Railroad Company to execute the provisions of the fourth section of chapter 42 of the acts of the General Assembly," passed at its session of 1836, etc.

That pursuant to the provisions of the said act, R. R. Bridgers, President of said Wilmington and Raleigh (now Weldon) Railroad Company, executed and caused to be recorded in the office of Register of Deeds in and for Halifax County, and in the office of the Secretary of State in said State, a paper-writing hereto attached and marked Exhibit "F."

That after the execution of the aforesaid agreement of February 14, 1837, the said Halifax and Weldon Railroad Company ceased to exercise any corporate acts or maintain any corporate existence or organization, and its road-bed, track' and right-of-way passed to and under the control of the Wilmington and Raleigh Railroad Company, and has ever since been under the said control and management as a part and portion of its main line of road. That at the session of 1867 of the General Assembly of said State an act was passed and duly ratified, entitled "An act to amend an act passed in 1833, entitled 'An act to incorporate the Wilmington and Raleigh Railroad Company.'" The provisions of the said amendatory act were, at a regular annual meeting of the stockholders of the said Wilmington and Weldon Railroad Company, held in the city of Wilmington,

N. C., on the 13th day of November, A. D., 1867, adopted as an amendment to the charter of said company.

That during the year 1882 the plaintiff began and completed a branch road connecting with its main road at a point near the town of Halifax in Halifax County, and running to the town of Scotland Neck in said county. That during the year 1890 the said branch road was extended from the said town of Scotland Neck to the town of Greenville, in Pitt County, and during the year 1891 said branch road was extended to the town of Kinston, in Lenoir County, being in all a distance of eighty-five miles.

That said branch road runs through the county of Halifax, a distance of twenty-three and one half miles  Whether this branch road was constructed pursuant to the provisions of section 21 of the original charter of the plaintiff company, or pursuant to provisions of the amendatory act of 1867, or either of them, does not appear. The plaintiff averring that said branch was built pursuant to the authority vested in it by its said charter in full compliance with the provisions and requirements thereof, the defendant denying this averment, in the absence of any proof by the plaintiff, the Court for the purpose of this hearing finds, as a fact, that it is not shown that the said branch was built pursuant to the provision or amendments thereto. The said branch road is operated and managed by the officers of the plaintiff company, and known as the Scotland Neck Branch of the Wilmington and Weldon Railroad.

In addition to the said Scotland Neck Branch, the plaintiff company owns and operates, in the same manner, the following other branch roads in the State:

The Clinton and Warsaw Branch, 13 miles in length; the Nashville or Spring Hope Branch, 18 miles in length; the Wilson and Fayetteville Branch, 73.6 miles in length; the Tarboro Branch, 17 miles in length, making a total of 206.6 miles, the main road being 162 miles in length. The said

branch roads, except the Tarboro Branch, have been built within the past ten years.

The plaintiff company also owns other investments in railroads and other properties, fully set forth in the affidavit of defendant B. I. Alsbrook.

The Railroad Commission for said State, pursuant to the provisions of the Revenue Act, ch. 323, Acts 1891, assessed the portion of the plaintiff's main road and rolling stock from Halifax to Weldon, being the portion thereof acquired from the Halifax and Weldon Railroad as hereinbefore set forth, for taxation at $161,709, and directed the Commissioners of Halifax County to place the same upon the tax-list of said county for the year 1891.

That said County Commissioners, pursuant thereto, levied an *ad valorem* tax of _____ upon said railroad and rolling stock.

That said Railroad Commissioners, pursuant to the Revenue Act aforesaid, assessed that portion of the Scotland Neck Branch lying in the said county for taxation at $147,911.72, and directed the said County Commissioners as aforesaid to place the same upon the said tax-list for said county for the year 1891 as aforesaid. The said County Commissioners, pursuant thereto, levied an *ad valorem* tax of $_____ upon said branch road and rolling stock. All of which will more fully appear by reference to the records attached to plaintiff's reply herein.

That said tax-list was duly placed in the hands of the defendant, Sheriff of said county, and he has demanded of the plaintiff payment of said taxes; the same being refused, he threatens to collect the same by distraint.

That the Commissioners or officers whose duty it then was to make out the tax-list and assess for taxation property in Arcadia, Dalmatia and Rapides townships in Halifax County during the year 1869, placed upon the said tax-list for said townships for said year the road-bed and rolling stock of

plaintiff for the distance for which it passes through the said townships in said county and assessed the same for taxation.

That said tax-list was placed in the hands of John A. Reid, the then Sheriff of said county, for collection. That the portion of the plaintiff's road-bed and rolling stock, assessed for taxation by the Railroad Commissioners as hereinbefore set forth, is part of the said road-bed and rolling stock so assessed for the year 1869, the same assessment of 1869 including all of that portion between Halifax and Weldon acquired from the Halifax and Weldon Railroad Company, as hereinbefore set forth.

That at Spring Term, 1870, of the Superior Court of Halifax County, the plaintiff instituted an action against the said John A. Reid, Sheriff as aforesaid, for the purpose of enjoining and restraining the collection of said tax assessed against its said property as aforesaid.

That said action was tried and finally determined at the January Term, 1873, of the Supreme Court of said State favorable to said plaintiff, all of which will more fully appear by reference to the transcript and judgment roll in said action entitled *The Wilmington and Weldon Railroad* v. *John A. Reid.*

The said record is set up by the plaintiff as an estoppel against the present defendant.

The Court was of the opinion that so much of the tax set forth in the complaint, or as is assessed against that portion of the plaintiff's road-bed and rolling stock lying and being between the towns of Halifax and Weldon, and called in said assessment the "Halifax and Weldon Railroad," is unconstitutional and void—the said property being exempt from any public charge or tax whatsoever, by virtue of the several acts of the General Assembly hereinbefore set forth. It is thereupon adjudged that the defendant be and is hereby enjoined and restrained from proceeding to enforce the payment of said tax until the final hearing of this cause and the further order of the Court herein.

That the tax assessed and levied as aforesaid against the plaintiff upon the Scotland Neck Branch is valid. That such branch road is not exempt from taxation under the provisions of the charter of said plaintiff company.

That it is thereupon adjudged that the restraining order heretofore made in this cause in respect to the said tax and the collection thereof be and the same is dissolved and vacated.

That the motion for an injunction in respect thereto be and the same is denied.

That the plaintiff and defendant each pay one-half of the cost incurred by this motion and the proceedings thereunder.

From so much of the foregoing judgment as refers to the Halifax and Weldon Railroad and enjoins the collection of the tax thereon, the defendant appealed to the Supreme Court.

From so much of the said judgment as refers to the Scotland Neck Branch, and refuses the motion for an injunction restraining the collection of taxes thereon, the plaintiff appealed to the Supreme Court.

*Messrs. Thos. N. Hill* and *W. H. Day*, for plaintiff.

*Messrs. R. O. Burton*, *E. L. Travis* and *W. E. Daniel*, for defendant.

### PLAINTIFF'S APPEAL.

CLARK, J.: The question presented by this appeal is the right of the State to tax the branch railroad from Halifax to Kinston, which was constructed by the plaintiff corporation in 1882, and in the succeeding years.

In the case of the *Wilmington and Weldon Railroad Co.* v. *Reid*, 13 Wall., 264, it was held that the charter of the plaintiff, which was granted in 1833, exempted all its property from taxation. The correctness of that decision, and its finality, at least in the aspect in which it was then presented

to the Court, are not called in question by this litigation. The defendant, for the purposes of this case, concedes that it protects from taxation, under State authority, all the property of the main line of said road and such property as may be necessary for its successful operation; but it contends that this branch railroad, extending from Halifax to Kinston eighty-five miles, is no part of the property necessary for the operation of the plaintiff company; that it was not contemplated by the charter of 1833; nor within the exemption conferred thereby, nor within the purview of the decision of the United States Supreme Court in the case of the *Wilmington and Weldon Railroad Co.* v. *Reid, supra.* The Legislature and the Railroad Commissioners being of that opinion, the latter, under legislative authority, have assessed said branch railroad for taxation. Under proper proceedings the sum assessed on so much of said branch railroad as lies within the county of Halifax has been placed on the tax-list for said county. The plaintiff obtained a restraining order against the collection of the tax, which the Court below dissolved, and from the latter order the plaintiff appeals to this Court.

The right of taxation is the highest prerogative of sovereignty. Its exercise is necessary to the very life and existence of the State. Its possession marks — regardless of the nominal form of government — the real nature of the government, whether republican, monarchical or autocratic. It is the power of the purse to which the power of the sword is a mere sequence. It seems anomalous, therefore, that such a power should be capable of alienation in perpetuity by the Legislature in a free State, and that any portion of it could be irrevocably bargained away for any consideration to a corporation or anyone else. More especially in a case like the present, where the contract is claimed to have been made by a Legislature elected for a term of one year, and the alienation of the taxing power is asserted to be per-

110—10

petual, and that for countless ages, indeed till the final catastrophe of all things, succeeding generations are to guard and protect at their own expense the property of the corporation without receiving from it any of the contributions which all others are called upon to make for the maintenance and support of a civil government. A contract of such a nature, if it were possible between private individuals, would be relieved against in any court of equity. The grant of a perpetual exemption from taxation has indeed been held invalid by Courts of the highest respectability. *Brewster* v. *Hough*, 10 N. H., 138; *Mott* v. *R. R. Co.*, 30 Pa. St., 9; *Bank* v. *Debolt*, 1 Ohio St., 591; *Knoup* v. *Bank*, *Ibid*, 603; *Parker* v. *Redfield*, 10 Conn., 490, and there are others. In *Mott* v. *Railroad*, *supra*, the learned Chief Justice says that a sale "to one class of citizens of an exemption from all taxes forever, thus throwing all the public burdens upon others for all time to come, is such a plain, palpable and open violation of the rights and liberties of the people, and such a clear case of transcending the just limits of legislative power that the Judiciary is bound to pronounce such an act null and void." In *Brewster* v. *Hough*, *supra*, PARKER, C. J., holds the same views and points out the material difference between the right of the Legislature to grant land, or corporate powers, or money, and the right to grant away the essential attributes of sovereignty. The latter, he adds, cannot be subject-matter of a contract. To the same effect are the dissenting opinions of CATRON, J., *Bank* v. *Knoup*, 16 How., 369, and other Judges of the United States Supreme Court, in that and in other cases; and especially the notable dissenting opinions of CHASE, C. J., and MILLER and FIELD, JJ., in *Washington* v. *Rouse*, 8 Wall., 441. In that case, the three judges named (by common consent the ablest men then on that bench) say through the distinguished Judge who has so lately passed from among us, full of years and of honors: "We do not believe that any legislative body, sitting under a State Constitution

of the usual character, has a right to sell, to give, or to bargain away forever the taxing power of the State.     *   *   *
If the Legislature can exempt, in perpetuity, one piece of land, it can exempt all land.   It can as well exempt persons as corporations." They go on to say that rich men and rich corporations, with the appliances they are known to use, may obtain perpetual exemption "from taxation and cast the burden of government and the payment of debts on those who are too poor or too honest to buy such immunity;" and they say further, "With as full respect for the authority of former decisions as belongs, from teaching and habit, to Judges trained in the common law system of jurisprudence, we think that there may be questions touching the powers of legislative bodies, which can never be finally closed by the decisions of the Court, and that the one we have here considered is of this character.   We are strengthened in this view of the subject by the fact that a series of dissents from this doctrine by some of our predecessors, shows that it has never received the full assent of this Court, and referring to those dissents for more elaborate defence of our views, we content ourselves with thus renewing the protest against a doctrine which we think must be finally abandoned."

This Court with equal deference to the same authority is constrained to say, in construing the Constitution of this State in force when the plaintiff's charter was granted, that it did not confer upon the Legislature the power to enact any law which was beyond repeal by its successors, nor as agents of the State was the power confided to them to alienate the sovereign right of taxation irrevocably by bargain or grant.   The construction of a State Constitution by its highest Court is admitted, by TANEY, C. J., in *Ohio* v. *Debolt*, 16 How., 431, to be binding on the Federal Judiciary, and he places the decision of that case, which sustains the exemption from taxation, on the ground that the decisions of the Supreme

Court of Ohio on that subject had been conflicting, and choice had to be made between them. But there have been no conflicting decisions on this point in this State. It may be noted that the Dartmouth College case merely affirmed that a contract by a charter was binding on the State, but did not hold that alienation of the taxing power was subject to contract. The question, however, is not now necessarily before us. This taxation does not concern the " main line," and the defendant concedes, as he must, that the Supreme Court of the United States has decided that such grants of exemption from taxation, though perpetual, are valid if made for an equivalent, and if the contract of exemption is clear beyond a reasonable doubt. The unanimous view of the Court is significantly expressed by Mr. Justice FIELD in Delaware Tax Case, 18 Wall., 206 : " If the point were not already adjudged, it would admit of grave consideration whether the Legislature of a State can surrender this power and make its action in this respect binding upon its successors, any more than it can surrender its police power or its right of eminent domain. But the point being adjudged, the surrender when claimed must be shown by clear unambiguous language which will admit of no reasonable construction consistent with the reservation of the power. If a doubt arise as to the intent of the Legislature, that doubt must be resolved in favor of the State." The same high Court has delivered repeated utterances of the same purport.

" The exercise of the taxing power is vital to the functions of government. Except where specially restrained, the States possesses it to the fullest extent. *Prima facie* it extends to all property, corporeal and incorporeal, and to every business by which livelihood or profit is sought to be made within their jurisdiction. When exemption is claimed, it must be shown indubitably to exist. At the outset every presumption is against it. A well-founded doubt is fatal to the claim. It is only when the terms of the concession are

too explicit to admit fairly of any other construction that the proposition can be supported." *Farrington* v. *Tennessee*, 95 U. S , 779.

"Neither the right of taxation nor any other power of sovereignty which the communities have an interest in preserving undiminished will be held by the Court to be surrendered, unless the intention to surrender is manifested by words too plain to be mistaken." *Ohio Life Insurance Co.* v. *Debolt*, 16 How., 416.

Exemptions from taxation are regarded as in derogation of sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the language used, construed *strictissimi juris.* *Railroad* v. *Thomas*, 132 U. S., 185.

In the leading case of *Bank* v. *Billings*, 4 Peters, 514, Chief Justice MARSHALL says: "That the taxing power is of vital importance, that it is essential to the existence of government, are truths which it cannot be necessary to reaffirm. As the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not be presumed in a case in which the deliberate purpose of the State to abandon it does not appear. We must look for the exemption in the language of the instrument, and if we do not find it there, it would be going very far to insert it by construction."

In *Railroad* v. *Dennis*, 116 U. S., 668, Mr. Justice GRAY says: "The rule has been strictly upheld and constantly reaffirmed in every variety of expression. It has been said that neither the right of taxation nor any other power of sovereignty will be held by this Court to have been surrendered, unless such surrender is expressed in terms too plain to be mistaken; that exemption from taxation should never be assumed, unless the language used is too clear to admit of doubt; that nothing can be taken against the State by presumption or inference; the surrender, when claimed, must

be shown by clear, unambiguous language which will admit of no reasonable construction consistent with the reservation of the power; if a doubt arise as to the intent of the Legislature, that doubt must be solved in favor of the State; that a State cannot, by ambiguous language, be deprived of this highest attribute of sovereignty; that any contract of exemption is to be rigidly scrutinized and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require; and that such exemptions are regarded as in derogation of common right, and therefore not to be extended beyond the exact and express requirements of the grants, construed *strictissimi juris.*"

In the Delaware Railroad Tax Case, 18 Wall., 206, Mr. Justice FIELD, said: " Before any such exemption or limitation can be admitted, the intent of the Legislature to confer the immunity or prescribe the limitation must be clear beyond a reasonable doubt. All public grants are strictly construed; nothing can be taken against the State by presumption or inference. The established rule of construction in such cases is that rights, privileges and immunities not expressly granted are reserved. There is no safety to the public interest in any other rule; and with special force does the principle upon which the rule rests apply when the right, privilege or immunity claimed calls for any abridgement of the powers of sovereignty, or any restraint upon their exercise. The power of taxation is an attribute of sovereignty, and is essential to every independent government. As this Court has said, the whole community is interested in retaining it undiminished, and has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear. *Bank* v. *Billings,* 4 Pet., 561."

The plaintiff claims that its exemption is not only unlimited as to duration but as to subject-matter, and that by its charter it has the right to build anywhere, at any time,

branch roads whenever it shall be its pleasure so to do, and that such branch roads wherever constructed within the limits of this State shall be forever exempted from payment of State, county, or city, or any other tax, and that such exemption extends to all rolling stock, shops, buildings and other property which it shall use in connection with such branch railroads, whenever or wherever constructed, or to be hereafter constructed. Its claim is that the grant made by the State in the act of 1833 is unlimited as to time, and only limited as to extent by the area of the State, both as regards exemption from taxation and in the grant of the right of eminent domain. Already the branch roads built and operated are near 250 miles, while the main line as chartered from Wilmington to a "point on Roanoke river" is only 154 miles, and other branch extensions are in progress or in contemplation.

At present over four hundred miles of railway and the property used therewith, worth probably ten or twelve millions, are claimed to be exempt, and this is small in comparison with what may come. Indeed, the plaintiff contends that it has the right, should it see fit, to parallel every tax-paying railroad in the State, now or hereafter to be built, with its non-taxable branches. This is far removed from the one hundred miles of railway from Wilmington to Raleigh and its modest capital of $300,000 as contemplated in the charter. A claim so vast and comprehensive challenges attention and compels scrutiny.

We do not think that the claim thus put forward is plain "beyond a reasonable doubt," nor upon any fair, reasonable construction of the terms of its charter.

The charter, as originally granted, was for the construction of a railroad from Wilmington to Raleigh, a distance somewhat over one hundred miles, with a capital stock of $800,-000. An act passed in 1835 authorized a change of terminus to "some point on the Roanoke river," and an increase

of the capital stock to $1,500,000, and the road was accordingly built to Halifax, one hundred and fifty-four miles, and thence by the acquisition of the Halifax and Weldon Railroad it was extended to Weldon, a distance of one hundred and sixty-two miles from Wilmington. It also authorized the company, as a part of its business, to own and operate steamboat lines and other vessels to Charleston "or elsewhere," and makes other important changes. This amendatory act contains no exemption from taxation. The question whether the radical change in the location, direction and length of the proposed railroad was not, in effect, a new charter, and its acceptance a release from the exemption from taxation contained in the "original charter" (as it is termed in the amendatory act), is a question which was not presented in the case of *Wilmington and Weldon Railroad Co.* v. *Reid,* quoted above, and it is not necessary that we now consider it. Indeed, we think that a different inference might be drawn from it than that in *Railroad* v. *Commissioners,* 88 N. C., 519, but the learned Judge who wrote that opinion based it on the ground that when the case of *Wilmington and Weldon Railroad Co.* v. *Reid,* 13 Wall., 264, was decided, "it was not suggested" that this radical alteration did not revoke the exemption. It might seem, perhaps, more just to say that the point, not having been presented, was "*res non judicata.*" That case (*Railroad* v. *Reid*) was decided in this Court, PEARSON, C. J., delivering the opinion, on the ground that the exemption was not broad enough to cover the franchise, and the reversal in the United States Supreme Court was directed to that view of the case alone, this other not having been raised.

It is very certain that, by many adjudications, so radical a change of route would have released subscriptions made to the original company, and it would hardly seem reasonable that the Legislature meant to confer upon the corporation the right to a perpetual exemption from taxation of any number of lines by sea as well as by land, or to sanction an exemp-

tion for the large addition to the capital stock and to the length of the road without an express exemption from taxation of such addition. *Scovill* v. *Thayer*, 105 U. S., 148; Morawitz, §§ 434, 447, 452. And if there was, in effect (by the Act of 1835), a new corporation, the exemption from taxation ceased, since it is not expressly conferred. *Morgan* v. *Louisiana*, 93 U. S., 217; *Ches. R. R.* v. *Miller*, 114 U. S., 176.

We do not, however, deem it essential to discuss this further, as the question before us may be determined upon the words of the original charter. In that Act (1833) the first twenty sections are taken up with provisions for the main line from Wilmington to Raleigh. The 21st section gives authority to open books of subscription to construct branch roads, such subscription not to exceed $200,000, and to be applied exclusively to the construction of such branch roads.

Sections 22 and 23 are as follows:

"22. Be it further enacted, that all the powers, rights and privileges conferred by the preceding sections upon the said company, in respect to the main road and the land through which it may pass, are hereby declared to extend in every respect to the said company and the President and Directors thereof in the laying out, in the construction, and in the use and preservation of said lateral or branch roads.

23. Be it further enacted, that it shall and may be lawful for the said company to construct a branch to the main road as aforesaid, under the restrictions aforesaid, as soon as the main road has reached the point at which the branch road is intended to be joined with the main road; but they shall not, under any pretence whatever, apply the funds of the company to the construction of a lateral or branch road, until the main road is completed, except they be subscriptions specifically made for the branch or lateral road."

The remainder of the charter, in effect, applies to the main line. Sections 21, 22 and 23, which have reference to the

branch roads, seemingly having been interpolated, by way of amendment probably, into the charter as originally drafted.

We do not think section 22 extends to the branch roads the exemption from taxation which is conferred upon the main line from Wilmington to Raleigh, which is granted by section 19, for several reasons —

1. The object of the bounty of the Legislature was to secure the building of a railroad from the capital of the State at Raleigh to its principal seaport at Wilmington. To secure that, the exemption conferred by section 19 is, so far as the language goes, clear and unrestricted; but the language in reference to the exemption of the branch roads is not unrestricted. Had it said "the powers, privileges and rights" conferred on the company "in respect to the main road and the lands through which it may pass" were extended to the branch roads, and stopped there, it would still be a question whether more was intended to be granted than the right to the exercise of the privilege of eminent domain, but the meaning is placed beyond doubt by the superadded words, "in the laying out, in the construction, and in the use and preservation of said lateral or branch road." These are words of limitation. They restrict the extension of the privileges of the main line to those specified purposes, and none of them by any construction can embrace and cover an exemption from taxation. But, indeed, the point is a thrice adjudicated one. In *Railroad* v. *Commissioners*, 103 U. S., 1, the plaintiff company had conferred on it "all the powers and privileges necessary for its construction and repair," as were conferred by certain sections (named) of the charter of the B. and O. Railroad Co. One of the sections named conferred upon the B. and O. R. R. Co., exemption from taxation. The Court holds that this exemption was "undoubtedly a privilege, but not necessary either to the construction, repair or operation of a railroad," and hence the plaintiff company could not claim exemption from tax-

ation.   Where a railroad company was by its charter invested
"for the purpose of making and using said road with all the
powers, rights and privileges, and subject to all the disabili-
ties and restrictions" of another company which was per-
petually exempt from taxation, it was held that a grant of
immunity from taxation did not pass.   *Railroad* v. *Gaines*,
97 U. S., 697.   And to the same purport is *Morgan* v. *Louisi-
ana*, 93 U. S., 217.   So, in the present case, the privileges
and rights of the main line are extended to the branch
roads "in the laying out, in the construction, and in the
use and preservation" of said lateral lines.   These words do
not embrace exemption from taxation.   The provisions in
regard to the branch roads are to be found in sections 21, 22, 23,
and any references in other portions of the act (which is
taken up with provisions as to the road proper) to exemption
from taxation apply to the main road, and cannot control
the manifest limitation as to the branch roads contained in
this section.

2. It may be noted in passing that the branch roads,
exceeding now by much the main line in length, being near
250 miles as against 154 in the line from Wilmington to
Halifax, far exceed the $200,000 of branch roads contem-
plated by the act of 1833; and they do not appear to have
been constructed, as there provided, by opening books of
subscription specially for such branch roads.   If this had
been done, it is manifest that the 250 miles of branch roads
were not constructed by means of the $200,000 subscription
authorized for that purpose.   Had the State intended to
exempt the branch roads, it is apparent, from the limitation
in section 21 of the capital stock for the purpose to $200,000,
that it was not intended to authorize an unlimited number
of miles of branch roads, and the consequent exemption of
an unlimited quantity of capital from bearing its due share
of maintaining the burdens of civil government.

3. An act passed in 1867 authorized the plaintiff to open books for subscriptions to build branch roads to the amount of $25,000 per mile.

This might be deemed an extension of the right to build branch lines, but this act contains no exemption from taxation of the branch lines or of the additional capital thereby authorized, and they would not be exempted if built thereunder. *Railroad.*v. *Wright,* 116 U. S., 231; *Railroad* v. *Guffey,* 120 U. S, 569. The plaintiff does not contend that its branch lines have been constructed under the authority of that act.

4. The act of 1833, section 33, provides: "If the company shall not have completed the main road from Wilmington to Raleigh in twelve years thereafter, then the company shall forfeit so much of the rights and privileges, hereby created, as confer upon the said company the power of extending the said road above the point at which it shall be then constructed; but they shall not forfeit their property and privileges in any manner as to so much of the road as they have completed." None of the branch roads were either begun or finished within said twelve years. One of sixteen miles in length was built in 1860, and the others since the adoption of the Constitution of 1868, which forbids the grant of exemption from taxation by requiring that taxation shall be uniform and *ad valorem.* If the branches were an integral part of the main line, their construction was not authorized after the lapse of twelve years. If they do not fall under that limitation, it is questionable whether the right to build them was not lost under the general act by " nonuser" for two years after the completion of the main line. Acts 1836, ch. 10; *The Code,* 688, 694. The branch roads of the plaintiff are not only not exempt from taxation, but it is not clear that their construction has been under warrant of law. If it be conceded that the construction of branch roads was authorized after such lapse of time, they could, in con-

templation of the charter, be only such as are short feeders to the main line. The branch road from Halifax to Kinston, whose taxation is here immediately in controversy, is eighty-five miles in length, nearly parallel to the main line and connecting with five other railroads, and is certainly not such a branch; nor is the Wilson branch, some 150 miles in length, about as long as the main line (with 125 miles in this State), and which is to be used hereafter practically as the main line of the plaintiff's traffic. The failure of the State to collect taxes cannot be taken as an abandonment of its right. No such presumption exists against the sovereign. *Railroad* v. *Dennis*, 116 U. S., 665.

The decision in *Wilmington and Weldon Railroad Co.* v. *Reid* is not, as claimed, an estoppel in this case, because it could only be such as to the matter there in controversy, to-wit, the taxes levied for that year (1869), the collection of which is enjoined; and, besides, the action is not between the same parties. The decision named has not the force of a precedent, because the scope of that decision did not embrace the branch roads, all of which, except one short line, have been built since, and that one branch was not in the county the tax of which was enjoined. It is also not a precedent even as to the main line, upon any material point which was not then raised or passed upon by the Court.

The Act of 1833 must be limited by the Constitution of the State then in force, which contained a provision forbidding "monopolies and perpetuities." The construction placed by State Courts upon the Constitution and laws of a State are held binding by the Federal Courts. Whether this provision has reference solely to the prohibition of restrictions upon alienation, or whether viewed in the light of the history of its adoption and judged by the context, it is meant, as has been suggested, to prohibit the grant by the Legislature of perpetual and exclusive privileges, is a matter which is not

now before us, and which cannot be brought before us in this collateral manner.   It can only be raised by a direct proceeding by the Attorney General, if so advised, in the nature of a *quo warranto* to test the validity of the charter on that ground. We forbear any expression of opinion, as the matter is not before us.

Affirmed.

DEFENDANT'S APPEAL.

CLARK, J.: The original charter of the plaintiff company was granted in 1833, under the name of The Wilmington and Raleigh Railroad Company, for the purpose of building a railroad from Wilmington to Raleigh.   This act also authorized the construction of branch roads.   By an amendatory act in 1835 the company was authorized to construct from Wilmington either to Raleigh or "to some point at or near the Roanoke river."   This election was not then made, but at some subsequent period (it does not from the pleadings appear when) it was exercised by building to Halifax in lieu of to Raleigh.   By the Act of 1833 a branch road could only be built after the main line reached the point of junction; but by section 3 of the Act of 1835 it is provided that the company may construct branch roads, under the rules and regulations set out in the Act of 1833, "either before or after they have completed the main railroad aforesaid."   In 1833 the Halifax and Weldon Railroad was chartered.   Its charter contained no exemption from taxation.   This road was completed its whole distance from Halifax to Weldon, a distance of eight miles, but having no rolling stock of its own permitted the Portsmouth Railroad Company to run its cars in 1836 over its road-bed and track.   In January, 1837, the Legislature passed an act authorizing the Halifax and Weldon Railroad Company to subscribe their stock to the Wilmington and Raleigh Railroad Company, and by an agree-

ment between the two companies, executed February 14th, 1837, this was done, it being stipulated therein that "the union of the two roads" should be made at the town of Halifax or as near thereto as practicable. By the Act of 1837, authorizing the consolidation, it is provided: "Upon the subscription of the stock held by the stockholders in the Halifax and Weldon Railroad Company, in the books of the Wilmington and Raleigh Railroad Company, all the property, real and personal, owned and held by the Halifax and Weldon Railroad Company shall vest in and be owned and possessed by the Wilmington and Raleigh Railroad Company aforesaid, and be owned and held and possessed by the said company in the same manner that all the other property, real and personal, which has been acquired by the said company is owned, held and possessed, and the road which may have been built or partly built by the Halifax and Weldon Railroad Company shall thenceforth be deemed to all intents, as well criminal as civil, a part of the Wilmington and Raleigh Railroad." Whether the proper construction and the effect of the provision that the property of the Halifax and Weldon Railroad shall be owned, held and possessed "in the same manner" that all the other property of the Wilmington and Raleigh Railroad Company is owned, held and possessed, confers on the former an irrevocable exemption from taxation, is the question presented by this appeal.

By the charter of the Wilmington and Raleigh Railroad Company, its main line between Wilmington and Raleigh was exempt "forever from all taxation." The power of taxation being an element pertaining to sovereignty, the power of any Legislature to alienate it, so as to bind forever all future Legislatures, and thus perhaps cripple or embarrass unborn generations, has been much doubted; but it has been decided by the Supreme Court of the United States that it may be done if clearly expressed, and if granted in return for an equivalent received by the State. The Legislature subsequently,

as stated, authorized a change of terminus from Raleigh to "some point on Roanoke river," which by the election of the company was the town of Halifax; to which point it was built and there made the union of the two roads when it absorbed the Halifax and Weldon Railroad. The Wilmington and Raleigh Railroad Company, in their agreement with the Halifax and Weldon Railroad Company, agree upon "the union of the two roads" at Halifax. The latter was "a point on the Roanoke river," and thence the Halifax and Weldon Railroad ran up the river and parallel with it to Weldon. By virtue of the election made to change its terminus from Raleigh to Halifax, the plaintiff claims that the road from Wilmington to Halifax (instead of from Wilmington to Raleigh) became exempt from taxation. By the charter of 1833, while the main road between the two termini, Wilmington and Raleigh (afterwards Wilmington and Halifax), was exempted from taxation, the branch roads authorized by said acts were not exempted from taxation, as we have held in the plaintiff's appeal in this case. We think that the question, whether the act authorizing the Wilmington and Raleigh Railroad Company to acquire the Halifax and Weldon Railroad Company exempted the property thus acquired from taxation, must be answered in the negative for several reasons—

1. Though the earnest contention that the right of taxation being an inherent right in the sovereign people, and that no temporary agency, such as a Legislature, elected for a term of one year, could alienate it or any part of it in perpetuity, and that their mandate only gives power to levy a tax or exempt from taxation during their term of office and until another Legislature shall act, has not been sustained by the United States Supreme Court, still it holds that the alienation of so important a right will only be valid "when the grant is clear beyond reasonable doubt." Mr. Justice FIELD in Delaware Railroad Tax Case, 18 Wall., 206.

And unless the grant is shown "by clear and unambiguous language, which will admit of no reasonable construction consistent with the reservation of the power (of taxation), the exemption claimed must be denied." Mr. Justice GRAY in *Railroad* v. *Dennis*, 116 U. S , 668.

2. If the act of 1837, authorizing the acquisition of the Halifax and Weldon Railroad Company's property had the effect to create a new company, whose line became thereupon extended from Wilmington to Weldon, thereby securing the operation of a continuous road between those points, the new charter thus granted and all claims to exemption thereunder have long since expired. Such charter, if it be one, was granted January 10th, 1837, and was subject to the provisions of the general act, ratified December 10th, 1836, which provided that "No body corporate hereafter to be established in this State shall exist for a longer term than thirty years unless otherwise provided in the act creating the same." Acts 1836, ch. 10. *Railroad* v. *Maine*, 96 U. S., 499. If, however, this was not a new charter it was not a contract, for the State received no equivalent or consideration therefor, nor any promise or obligation. It did not secure the building of a new railroad, for the building of the railroad from Wilmington to Halifax had already been contracted for by Act of 1835, and the railroad from Halifax to Weldon had already been built and completed, and was being operated by the Portsmouth Railroad Company. The right granted the Halifax and Weldon Railroad Company to subscribe their stock to the Wilmington and Raleigh Railroad Company was therefore a mere privilege, a benefit sought for by them and granted by the State as a mere gratuity, and if the language used is broad enough to cover the property so transferred, with the exemption from taxation claimed under prior acts by the Wilmington and Raleigh Railroad Company, still, being a mere privilege or gratuity, the State possessed the right to withdraw it and to tax the transferred property, as it has

110 — 11

since authorized to be done by several acts of the Legislature. *The Code,* § 3677; Acts 1891, ch. 323, § 6. This has often been held. In *Tucker* v. *Ferguson,* 22 Wall., 527, it is held that "an act of the Legislature exempting property of a railroad from taxation is not a contract to exempt it, unless there is a consideration for the act. An agreement where there is no consideration is a nude pact. The promise of a gratuity spontaneously made, may be kept, changed or recalled at pleasure; and this law applies to the agreements of States made without consideration, as well as to those of persons." To same effect are *Rector Christ Church* v. *Howard,* 24 How., 300; *Railroad* v. *McGuire,* 20 Wall., 36; *Railroad* v. *Supervisors,* 93 U. S., 595; *Welch* v. *Cook,* 97 U. S., 541; Morrawitz Pr. Corp., §§ 1053 and 1054. In *Railroad* v. *Philadelphia,* 101 U. S., 528, Mr. Justice CLIFFORD says: "Exemptions of the kind, however, are to be strictly construed, the rule being that the right of taxation exists unless the exemption is expressed in clear and unambiguous terms, and that in order that it may be effectual, it must appear that the contract was made in consequence of some beneficial equivalent received by the State, it being conceded that if the exemption was granted only as a privilege, it may be recalled at the pleasure of the Legislature." Cooley Const. Lim. (4 Ed.), 342; Cooley, Taxation, 146.

The Halifax and Weldon Railroad was already constructed, and was being operated by the Portsmouth Railroad Company. If therefore the act authorizing its transfer to the Wilmington and Raleigh Railroad Company can be construed as conferring upon it an exemption from taxation, a quality which did not before attach to the transferred property, such grant of exemption was a mere privilege, not a contract with the State and therefore revocable. This case differs from *Humphrey* v. *Pegues,* 16 Wall., 244, for, there, no inducement had been sufficient to procure the road to be built till

the exemption was granted, and on the faith of that grant it was built.

3. The authority given the Wilmington and Raleigh Railroad Company to acquire this additional property would not *per se* exempt it from taxation, since the necessity for the passage of such act shows it was not such property as it was authorized to acquire under, nor for the purpose of, its original charter, for which it was granted, *i. e.*, for constructing a railroad from Wilmington to Raleigh. The words in this act, that upon the acquisition by the Wilmington and Raleigh Railroad Company of the Halifax and Weldon, the road built by it from Halifax to Weldon "shall thenceforth be deemed to all intents, as well criminal as civil, a part of the Wilmington and Raleigh Railroad Company," mean simply that the railroad from Halifax to Weldon became fully and completely the property of the Wilmington and Raleigh Railroad Company. But that did not confer exemption from taxation, for the said company would own fully and completely its branch roads, which were not exempt. The exemption must depend upon the other words of the act, the language of which is that the property acquired from the Halifax and Weldon Railroad Company must be held "in same manner" as the other property of the company. This does not necessarily, beyond a reasonable doubt, mean that it is clothed with the same immunity from taxation. Exemption from taxation is an immunity, not a part of the *habendum.* "In same manner" doubtless referred to section 14 of the charter of the Wilmington and Raleigh Railroad Company, which specified that the property should be held in fee-simple, and to the other provisions specifying the uses which the company should make of its property. *Railroad* v. *Georgia,* 92 U. S., 665.

4. If it were true, however, that "in same manner" refers to privileges and immunities granted to the company, as well as to the manner of holding its property, still, as certain of

its property was exempt from taxation, and certain other of its property was not exempt (as we have held), to which class of its property does "in same manner" refer? By the settled rules of construction above quoted, the newly absorbed railroad must be assimilated to the property not exempt.

5. It will be noted that the Act of 1837 does not authorize the Halifax and Weldon road to be made a part of the "main line" of the Wilmington and Raleigh road; it became the property of and a part of the Wilmington and Raleigh road, but so it would if it was acquired as a branch or connecting road. There is nothing in the act inconsistent with its being a part of a branch line, which, the year before, by the Act of 1835, the Wilmington and Raleigh road had been authorized to construct "before constructing the main line." Indeed, the retention in this Act of 1837 of the title " the Wilmington and Raleigh" company would indicate as much. A branch from some point on the Wilmington and Raleigh road (as chartered) to Halifax and then extended by this purchase to Weldon (so as to connect by such branch with other roads), would not be as long a branch road as some other branch roads which this company has constructed, and is now operating; nor would the fact that the company, some years later (after having elected to change its terminus to Halifax) did construct its road to Halifax, and used the Halifax and Weldon road to connect with other roads northward, make it in law a part of its "main line," so as to exempt it from taxation. We know, as a current fact, that the same company, having built a branch road from Wilson through Fayetteville southward, has made arrangements by which that branch road, in point of fact, will henceforth be the "main line;" but in law and in purview of its charter, the "main line," so far as exemption from taxation is concerned, is restricted to the road between its termini as authorized by its charter—Wilmington and Halifax. The action of the corporation in using and operating the road

from Halifax to Weldon, and from Wilson to Fayetteville, as integral parts of its through line, was justified by the march of events, but that does not make these additional roads part of its "main line" from Wilmington to Halifax so as to exempt them from taxation.

· That twenty years after the act authorizing the acquisition of the Halifax and Weldon road the name of the Wilmington and Raleigh Railroad Company was changed to the Wilmington and Weldon Railroad Company has no bearing on this question, though it has no doubt led to the misconception concerning it. That act (Pr. Acts, 1854–'55, ch. 235) has no clause of exemption. It may have made the road from Halifax to Weldon a part of the main line from Wilmington to Weldon, but it did not make it a part of the main line of the Wilmington and Raleigh road, which extended from Wilmington to Halifax, and which only was exempted from taxation. The consolidation of a railroad whose property is exempt from taxation with one whose property is not so exempt, does not extend the exemption to the entire consolidated property in the absence of a clear and unmistakeable provision in the act to that effect. Delaware Tax Case, 18 Wall., 206; *Tomlinson* v. *Branch*, 15 Wall., 406 ; *Railroad* v. *Georgia*, 92 U. S., 665.

The exemption here claimed is the perpetual exemption from all taxes, State, county and municipal of the railroad from Halifax to Weldon by virtue of an exemption from taxation of the road from Wilmington to Raleigh, and of the subsequent act authorizing the consolidation with it of the road from Halifax to Weldon, which latter had already been built and completed without any exemption from taxation in its charter. The act of consolidation makes no reference, as we hold, to the exemption being extended to the absorbed road, and had it done so it would have been a mere privilege, having been granted without any consideration or benefit received by the State in exchange. While the act does provide that

the newly acquired property shall be to all intents the property of the Wilmington and Raleigh Railroad Company, it does not make it a part of the main line, and there is nothing which shows that it was not to be used as a branch road, or a connecting road, and, indeed, the latter seems to have been the purpose, as the name of the Wilmington and Raleigh Railroad Company was still retained. If to be used as a branch or connecting road, the property clearly was not intended to be exempt. It could hardly have been intended to make a railroad from Halifax to Weldon a part of a main line, either from Wilmington to Raleigh, or from Wilmington to Halifax, which were the authorized termini. In the absence of a clear, unambiguous intent to extend the exemption from taxation to the railroad from Halifax to Weldon, and of any consideration or benefit derived by the State, if it was so intended, the enormous and unusual grant of a perpetual exemption from all civil dues for the maintenance of government, while claiming the benefit of the protection it extends, cannot be upheld by any surmise or inference as to the probable intention of the Legislature when it conferred upon the plaintiff company the privilege of acquiring the Halifax and Weldon road.

For these reasons we think that the judgment of the Court below, so far as it holds that the line from Halifax to Weldon and the property used therewith are forever exempt from taxation, should be reversed.

The *pro rata* part of the rolling stock, commensurate with such part of the road, proportioned to the length of the whole line operated by the plaintiff, is also liable to taxation.

As already stated in the plaintiff's appeal, the decision in *Wilmington and Weldon Railroad Co.* v. *Reid* is not, as claimed, an estoppel in this case, because it could only be such as to the matter there in controversy, to-wit, the taxes levied for that year (1869), the collection of which is enjoined, and besides the action is not between the same parties. The

decision named has not the force of a precedent, because the scope of that decision did not purport to embrace the question of law which is now presented, but which was not then raised or passed upon by the Court.

Error.

Merrimon, C. J., (dissenting): Without here stating at length the reason for it, I am of opinion that the State cannot by contract or otherwise irrevocably part, in whole or in part, with one of its essential attributes, as, for example, the power of taxation. I am therefore of opinion that the Legislature had not power to exempt perpetually and irrevocably the plaintiff's property from taxation as it undertook to do; but the Supreme Court of the United States expressly decided otherwise in *Railroad* v. *Reid*, 13 Wall., 264. That Court had jurisdiction and authority to make such decision. That decision is authoritative and as well conclusive, unless the Court shall hereafter deem it necessary to overrule it and other like cases.

It is contended, however, that the case just cited does not embrace the " branch roads " of the plaintiff and the property appurtenant to and connected therewith. It seems to me clear that this view is founded in misapprehension. It does not appear from what the Court said or decided. It said pertinently, " there is no difficulty whatever in this case. The General Assembly of North Carolina told the Wilmington and Weldon Railroad Company, in language which no one can misunderstand, that if they would complete the work of internal improvements for which they were incorporated, their property and the shares of their stockholders should be forever exempt from taxation."

The statute expressly allows the plaintiff to construct "branch roads." The capital stock taken to build them is made part of the capital stock of the company, and the owners of such stock are made stockholders of the plaintiff, and the

branch roads constitute part and parcel of its property. There is no provision of the plaintiff's charter that in terms, or by reasonable implication, excepts the "branch roads" from the clause that exempts its property from taxation. That clause is general, and provides and declares that " all the property purchased by the said president and directors, and that which may be given to the company, and the works constructed under the authority of this act, and all profits accruing on the said works, and the said property shall be vested in the respective shareholders of the company and their successors and assigns forever, in proportion to their respective shares; and the shares shall be deemed personal property; and the property of said company and the shares therein shall be exempt from any public charge or tax whatsover." The terms and phraseology thus employed are plain, broad and sweeping, and the purpose is as broad as the language. They vest all the property, including "the works constructed under the authority of this act," in the shareholders of the plaintiff, and exempt the same from taxation. It is impossible for me to misunderstand the meaning and compass of a provision, which, in my judgment, is so strong and plain. And the purpose is obvious—it was to encourage the building of the railroad and "branch roads" thereof reaching out short distances from the main road at a time when the building of railroads was in its infancy, and it was difficult to induce capitalists to invest their money in such enterprises.

I abstain from a general discussion of the subject, and regret that I am constrained to dissent from the judgment of the Court.