MAUSOLEUM BUILDERS OF NEW JERSEY, APPELLANT, v. THE STATE BOARD OF TAXES AND ASSESSMENTS ET AL., RESPONDENTS.

Submitted December 11, 1916—Decided March 5, 1917.

1. A grant of exemption from taxation, even though made in respect to some particular property, is a personal privilege conferred upon the grantee, and the immunity thereby granted does not pass to a purchaser of the property, in the absence of an indication by the legislature, so clear and unmistakable as to leave no doubt of its purpose that it shall so pass.

2. Neither the language nor the history of section 3, paragraph 6, of the General Tax act of 1903 (*Comp. Stat., p.* 5083), which exempts "graveyards not exceeding ten acres of ground, cemeteries and buildings for cemetery use erected thereon," suggests that in passing it the legislature intended to confer immunity from taxation upon business corporations that should see fit to devote a part of their capital to the erection of mausoleums for purely commercial reasons and in the hope of making a profit out of the transaction.

On appeal from the Supreme Court, whose opinion is reported in 88 *N. J. L.* 592.

For the appellant, *Michael Dunn.*

For the respondents, *Daniel L. Campbell.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is an appeal from a judgment of the Supreme Court in a *certiorari* proceeding brought to test the validity of a tax assessed by the borough of Totowa upon a building erected by the "Mausoleum Builders of New Jersey" for purposes of sepulture. The claim of the owners of the building, who were the prosecutors below and are the appellants here, was and is that this property is immune from taxation under section 3, paragraph 6, of the General Tax act of 1903 (*Comp. Stat., p.* 5083), which exempts "graveyards not exceeding ten acres of ground, cemeteries and buildings for cemetery use erected thereon."

The exemption provision appealed to first became a part of our General Tax act by the supplement of April 11th, 1866. *Pamph. L., p.* 1078.. At that time lands used for the interment of the dead (with, perhaps, the exception of a few private lots where the owners of farms buried their own immediate families) were graveyards and cemeteries; the former being appendages to the churches in the state, used for the burial of the dead of the congregations, and in the ownership of the church organizations, the latter being owned by corporations created by the state either under special charter or general law, usually known as cemetery associations, and brought into existence for the primary purpose of acquiring lands to be devoted to the interment of the dead. The legislative scheme running through all of the enactments was the acquisition of a tract of land, the cutting it up into lots or plots, the selling of such lots or plots to individual purchasers for the purpose of burying the dead of such purchasers, and the perpetual maintenance of the tract in a proper and orderly condition. No change has been made in the text of the exemption enactment since its original passage, and the intention of the legislature with regard to its scope consequently remains unchanged. We are, therefore, to ascertain who were the beneficiaries of the immunity thus granted.

It is to be borne in mind that a grant of exemption from taxation, even though made in respect to some particular property, is a personal privilege conferred upon the grantee. *Morgan* v. *Louisiana,* 93 *U. S.* 217; *Wilson* v. *Gaines,* 103 *Id.* 417; *Memphis, &c., R. R. Co.* v. *Commissioners,* 112 *Id.* 609; *Mercantile Bank* v. *Tennessee,* 161 *Id.* 161; *State Board of Assessors* v. *Morris and Essex Railroad Co.,* 49 *N. J. L.* 193. The immunity, therefore, provided by the supplement of 1866 was granted to the owners of churchyards and to the owners of cemeteries; that is to say, to church organizations which maintain graveyards as appurtenances to their respective churches, and to cemetery associations and the owners of burial lots within the cemetery tract.

Is the Mausoleum Builders of New Jersey one of the class of corporations within the spirit of the exemption provision? We think not; and for the purpose of making plain the reasons for our conclusion, a short statement of the facts set out in the return to the writ of *certiorari* is necessary.

The Laurel Grove Cemetery Company, a specially chartered corporation of this state, was created for the purpose of acquiring land in Passaic county to be devoted to cemetery uses. It exercised the power conferred upon it, and located a cemetery in what is now known as Totowa borough. The tract was laid out in lots and plots, with walks and avenues running through it. The Mausoleum Builders of New Jersey is an organization incorporated under the General Corporation act of this state. Some of the objects of its creation, as set forth in its certificate of incorporation, are the building of mausoleums; the manufacture of every kind of material, and dealing in the same; the acquisition, holding and disposing of stocks and bonds, and other personal property; the acquisition and holding, leasing and conveying, of real estate in New Jersey and elsewhere, and the purchasing, owning, chartering and operating of steamboats, tugs, barges and other boats. Some time prior to the assessment of the tax under review (but just when the return does not show), these two corporations entered into an agreement by the terms of which the cemetery company agreed to sell to the Mausoleum Builders a plot of ground within the limits of the cemetery, one hundred by one hundred and fifty feet, for the sum of $10,000, for the purpose of enabling the purchaser to erect a mausoleum for the reception of the dead. The purchase-money was to be paid in installments, the first payment to be made when ground was broken for the erection of the building, the amount being $1,000, and each succeeding month $1,000 was to be paid until the whole sum was discharged. Pursuant to the provisions of this contract, the mausoleum company entered into possession of this plot and erected thereon the building which has been subjected to the tax.

It is asserted that the legal title to the plot had not been transferred at the time the tax was laid upon this building. Assuming this to be the fact, it does not seem to us to be material in determining the validity of the tax, for the equitable, though not the legal, title to the tract is in the purchaser. After the legal title passes to the mausoleum company, the plot will cease to be anything more than a tract of land, not belonging to the cemetery company and not a part of the cemetery property, but merely adjacent thereto and surrounded thereby. It will hardly be disputed that it will then be as much subject to taxation as if the land had never formed a part of the cemetery tract. And if the cemetery association could not transfer to its vendee by the delivery of the conveyance immunity from 'taxation as to the property conveyed, it must at least be doubted whether it could do so by the subterfuge of holding the legal title in trust for its vendee.

It has already been pointed out that immunity from taxation, even though granted with respect to some particular property, is a personal privilege; and it is entirely settled that such immunity does not pass to a purchaser of the property in the absence of an indication by the legislature, so clear and unmistakable as to leave no doubt of its purpose, that it shall so pass. The authorities from the United States Supreme Court already cited, and our own decision in 49 *N. J. L.* 193, *supra,* fully recognize this principle. See, also, *Picard* v. *East Tennessee, &c., Railroad Co.,* 130 *U. S.* 637.

Neither the language of the tax enactment, nor its history, suggests that in passing it the legislature intended to confer immunity from taxation upon business corporations that should see fit to devote a part of their capital to the erection of mausoleums for purely commercial reasons, and in the hope of making a profit out of the transaction. Nor any purpose to authorize the corporations to whom such immunity is granted to transfer the exemption to corporations of the character just described.

But even if the soundness of the conclusion thus broadly stated is doubted, it will hardly be denied that the purpose of the legislature to grant such immunity to purely business corporations, or to permit its transfer to them, does not appear "by language so clear and unmistakable as to leave no doubt" of the existence of that purpose; and to doubt is to deny.

The judgment under review will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, PARKER, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, JJ. 7.

*For reversal*—THE CHANCELLOR, SWAYZE, BERGEN, GARDNER, JJ. 4.